NATIONWIDE MUTUAL INSURANCE CO.,
a Corporation, Appellant,

v.

Norman H. BURKA, Appellee.

No. 1963.

Municipal Court of Appeals for the
District of Columbia.

Argued April 8, 1957.

Decided July 10, 1957.

Allan C. Swingle, Washington, D. C., with whom William T. Clague, Washington, D. C., was on on the brief, for appellant.

Milton M. Burke, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

This controversy arose from a garnishment proceeding in which appellant insurer as garnishee disclaimed coverage of its insured, one Robert Ledbetter, on the ground that the latter breached the so-called cooperation clause of an insurance policy.

Appellee's parked automobile was damaged when it was struck by a vehicle operated by one Henry McClain and owned by Ledbetter, who was insured under a property-damage liability policy issued by the appellant insurer. Suit was filed by appellee and judgment was rendered against Ledbetter and McClain. In the damage action Ledbetter filed an answer in his own behalf stating that he was not responsible for the accident, having sold the vehicle to McClain prior to the collision. Counsel was engaged by appellant insurer for Ledbetter and he defended on this theory.

Judgment not having been satisfied, the garnishment proceeding (the usual procedure in such cases) was instituted against the insurer in an effort to collect the judgment. In its answer to the writ the insurer denied any indebtedness to Ledbetter. Appellee filed a traverse and a hearing was held. At the hearing the insurer admitted it had defended Ledbetter in the damage action, but denied that it was his insurer on the day of the accident. This contention was predicated on the theory that an insurer may disclaim coverage if its insured fails to cooperate in the defense of the action under condition 18 of the cooperation clause of the policy, which reads:

"The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *"

Insurer's contention that the insured failed to cooperate rests on a discrepancy between Ledbetter's statements made prior to trial to the insurer as well as to a representative of an investigating service employed by the insurer, and those made under cross-examination at the trial of the damage suit. More specifically, insurer claims that prior to trial Ledbetter represented to them that the vehicle had been sold to McClain before the accident and that the finance company, which held a conditional sales contract on the car, had approved the sale. In contrast with this, it is claimed that under cross-examination at the trial Ledbetter testified that the sale of the vehicle was conditioned upon the approval of the finance company and that it had never approved the transaction. The insurer argues that the contradictory statements constitute a breach of the cooperation clause. We shall later discuss these statements in greater particularity.

This appeal is taken from the judgment in the garnishment proceeding which found against insurer.

The rule in this jurisdiction is well settled that an insurer seeking relief on the ground of lack of cooperation must show that the discrepancies in statements of an insured were made in *bad faith* and that the statements were both material in nature and prejudicial in effect. Galt v. Phoenix Indemnity Co., 74 App.D.C. 156, 120 F.2d 723.[1] What constitutes a lack of cooperation is ordinarily a question of fact for the determination of the trier of the facts and where there is substantial evidence to sustain the finding, it will not be disturbed by an appellate court. With this fundamental principle in mind, we examine the statements by Ledbetter and the other evidence in this controversy.

It is conceded that on September 23, 1955, at least a week before the accident, the insured executed a bill of sale wherein he purported to convey ownership of the vehicle to McClain, subject to the claim of the finance company, which McClain agreed to assume. The bill of sale shows on its face that the sum of $900 was due to the finance company. The evidence further indicated that the vehicle was turned over to McClain the same day and that the latter was in possession of it up to and at the time of the accident.

Immediately following the accident, Ledbetter reported to the insurance company. He exhibited to it the bill of sale which showed he had sold the car to McClain and which also indicated that the finance company, *named therein,* had a lien on it. On the same day, when interviewed by the investigating company's representative, he stated:

"* * * Previous to the sale, * * * I called [the finance company]

1. See also State Automobile Mut. Ins. Co. of Columbus, Ohio v. York, 4 Cir., 104 F.2d 730, certiorari denied 308 U.S. 591, 60 S.Ct. 120, 84 L.Ed. 495, citing Medico v. Employers' Liability Assur. Corp., 132 Me. 422, 172 A. 1.

and inquired about having the title changed to McClain. They told me to have McClain get in touch with them relative to the change of title. McClain called [the finance company] several times and *I believe that they had approved the sale* but wanted McClain to sign some papers. I am not sure whether McClain ever signed the papers. * * * Immediately after the sale, McClain took physical possession of the car and kept it at his house. As far as I was concerned, I had sold the car and had nothing further to do with it. McClain also was going to have the tags transferred to his name, but I am sure that he had not, as yet, done this at time of the accident on October 1, 1955. A check would have to be made with [the finance company] to determine whether or not the mortgage had actually been transferred to McClain at time of accident. * * *" (Emphasis supplied.)

In an accompanying statement to the same investigator McClain related that he had contacted the finance company which had orally agreed to transfer the "mortgage" to him; that it directed him to stop by to sign the necessary papers; and that in his mind the vehicle was in the possession of the finance company until the notes were paid, at which time the title would be turned over to him.

It is obvious that months before the accident trial, the representatives of insurer not only had notice of the finance company's interest in the transaction, but they were put on notice that there was also the possibility of controversy as to ownership of the vehicle. It is equally certain that they knew the license tags had not been transferred to McClain. Testimony to this effect was introduced by the investigator. Though insurer was by this information aware of the finance company's lien and the necessity of its approval before ownership could be transferred, it made no effort to investigate further and chose to defend Ledbetter on the basis of information acquired from him and McClain.

The contradictions on which insurer relies related to the transfer of ownership. While Ledbetter testified that he knew the sale was contingent upon approval of the finance company and that he himself had not obtained title from this company, he still maintained his position and believed the vehicle had been sold. Under the rule stated earlier, insurer had the burden of demonstrating that the variations were not only material, but that they were conscious, deliberate, and willful. Ocean Accident & Guarantee Corp. v. Lucas, 6 Cir., 74 F.2d 115, 98 A.L.R. 1461. The defense of lack of cooperation is an affirmative one and insurer in asserting it has the burden of proceeding.

We have searched the record carefully and while there are slight variations, we cannot say that they appear to be anything more than innocent inaccuracy or mistake. It is true that an insured owes a duty to his insurer to make a full and frank disclosure of all matters pertinent to the case. We think that Ledbetter gave insurer without delay a full statement of the knowledge he possessed. Nowhere in the record do we find an attempt on his part to withhold information or a conscious attempt to give information intended to deceive or mislead insurer in the preparation of its case. Neither has insurer pointed out any evidence of bad faith on the part of Ledbetter as was incumbent on it. The variance between Ledbetter's statements prior to the trial and those resulting from cross-examination differ in degree only. As has been pointed out, the original statements revealed the finance company's interest and its right of approval, but insurer did not choose to investigate this matter further. The judgment of the trial court is accordingly

Affirmed.