Argued May 6, reversed September 23, petition for rehearing
denied November 24, 1970 (Denecke, Tongue and Howell, JJ,
would allow rehearing), petition for reconsideration
denied March 17, 1971

# BAILEY, *Respondent, v.* UNIVERSAL UNDER-WRITERS INSURANCE COMPANY, *Appellant.*

474 P2d 746
482 P2d 158

*L. M. Schouboe,* Portland, argued the cause for appellant. With him on the briefs were Thomas Cavanaugh and Schouboe & Cavanaugh, Portland.

*Ferris F. Boothe,* Portland, argued the cause for respondent. With him on the brief were Black, Kendall, Tremaine, Boothe and Higgins, Portland.

Before MCALLISTER, Presiding Justice, and SLOAN, O'CONNELL, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

TONGUE, J.

This is an action on an insurance policy by a person injured in an automobile accident, who filed this action after obtaining an unpaid judgment against the driver of the vehicle alleged to be covered by that policy.

Defendant denied coverage on three grounds: (1) that the policy, issued to an automobile dealer, did not cover the car involved in the accident; (2) that defendant was given no notice of the true facts of the accident, and (3) that the driver of the car failed to cooperate in the defense of the original action. The case was tried before the court, sitting without a jury.

Prior to the accident defendant issued an insurance policy to Kellum Motors, Inc., an automobile dealer at Gladstone, Oregon. Kellum also operated a used car lot several miles away. Wilbert Steele, the driver in question, did repair work at the used car lot in the evenings. He was not an employee, however.

On July 23, 1967, Steele started home after work in his own car, which broke down. He then was permitted by the used car lot manager, Mr. Smith, to borrow one of the used cars to drive home. On the way home he collided with a vehicle driven by plaintiff. The accident was investigated by an officer who prepared a report stating, among other things, that

the car was owned by Kellum Motors. That statement was based upon information given by Steele at the scene of the accident to the officer, as he later testified.

The next evening Steele took the car back to the used car lot and told Smith that he had an accident with it. He also told Smith that "I guess I've got to buy it now that I wrecked it." No price was agreed upon, however, and no papers were signed at that time. In the course of the discussion the idea was suggested, however, apparently by Steele, that he would "represent" that he owned the car at the time of the accident.

Some time later a "retail installment contract" was prepared and signed, predated as of July 22nd, as well as a "car order," also originally predated as of "7/22," but with that date crossed out and redated "8/1" 1967. A "commission voucher" for a commission on the sale to Smith was also dated "8-1-67." The amount of that commission was not included in the check to Smith, dated July 31, 1967, for other sales made by him in July. The "used vehicle sales journal" sheet for the "month of August 1967," however, shows the sale to Steele as the first item at the top of that sheet, with the date "7/22," instead of including it as the last item on the preceding sheet for used car sales for the month of July.

About fifteen days after the accident an investigator for plaintiff's insurance company visited Kellum Motors and in examining its records noticed some of these discrepancies. On that same day he learned that defendant was Kellum's insurance carrier. He then called and told one of its agents that "there was an accident involving a vehicle that possibly was owned

by Kellum Motors, and it might be advisable for him, at that time, to look into the matter."

Defendant's investigator then visited Kellum Motors, where he examined and was given a copy of the car order and the retail installment contract. He noted the alteration on the car order and was told that "the books had been closed when these came through from the car lot" and that the alteration on the car order was made "for financing reasons only." The investigator then took a statement from both Smith and Steele, who told him that Steele signed the contract to purchase the car on July 22nd and had the accident the next day. He then reported and recommended that "since Mrs. Bailey was seriously injured," defendant "take the position that this car had been sold and was not insured under your policy."

Plaintiff then filed an action for personal injuries against both Kellum Motors and Steele, alleging that the car was owned by Kellum and that it was being operated by Steele. Defendant provided counsel to defend Kellum but not Steele. Depositions were then taken of Steele, who appeared without counsel and again stated that he was not an employee of Kellum and had bought the car the day before the accident.

On May 7, 1968, that case came on for trial. Plaintiff then took an order of voluntary nonsuit against Kellum Motors and took an order of default against Steele, who had made no appearance. Plaintiff also offered evidence in support of her complaint and on May 13th judgment was entered by default against Steele for $19,080.72.

Meanwhile, on May 10, 1968, plaintiff's attorney again visited Steele, who then and for the first time admitted that he had lied in previous statements that

he had bought the car the day before the accident and admitted that it was not purchased by him until after the accident.

Six weeks later plaintiff filed this action. The deposition of Smith, the used car lot manager, was then taken and he then testified that after the accident Steele suggested the idea that he would "swear that it was my car" because "I had bought it" prior to the accident and told Smith "not to worry" and that the papers were signed later and predated. He also swore that he never informed Mr. Kellum or Mr. Rikke, his manager, of these facts and there was no testimony that they were previously aware of these facts.

No attempt was made by defendant, however, to set aside the default judgment against Steele, even after taking a further deposition of Steele, in which he also admitted that he had not purchased the car until after the accident and that he had previously lied in testifying to the contrary. Instead, defendant's attorney wrote a letter to Steele denying insurance coverage for the accident upon the ground that Steele was not an "insured within the definition of the policy" and upon the further ground that:

> "* * * you failed to cooperate in that you materially misrepresented the facts relating to the ownership of the vehicle you were operating at the time of the accident, all to the extreme prejudice of the Universal Underwriters Insurance Company."

1. *Steele was a "person insured" by the insurance policy.*

The trial judge held that Mr. Steele was a "person insured" under the terms of the policy. We agree.

The insurance policy was a "comprehensive liability policy (general-automobile)," No. 756241, issued

to Kellum Motors, Inc. As one of the "insuring agreements" the policy included an "omnibus clause," under which coverage for bodily injury was extended to "any person while using an owned automobile or a hired automobile, * * *, provided the actual use of the automobile is by the named insured or with his permission * * *" followed by certain exceptions not claimed to apply to this case.

Attached to this policy are a number of endorsements, most of which provide for additional coverage, with additional premiums.① Other endorsements clearly excluded certain hazards.② Included with these other endorsements was an endorsement designated as UU-3139, and entitled "Garage (premises-operations-automobiles)," with the subheading "Limited additional interests" and covering the "hazards" described as "garage operations hazard." This "garage endorsement," by definition of the term "insured," limits coverage for "automobile hazard" to persons such as paid employees or members of the household of the named insured and to "any other person" only while the

---

① These endorsements include, among others, an endorsement extending coverage to some 25 separate "locations," including "dwelling," "apartments" and "vacant lots," as well as business properties; a "customer rental endorsement;" an endorsement for uninsured motorist coverage; an "occurrence endorsement," broadening the scope of coverage for "accidents" to include "occurrence;" a "personal injury liability coverage endorsement," extending coverage to injuries from false arrest and related hazards; a "comprehensive personal liability endorsement" further extending coverage and benefit payments; a "use of other automobiles" endorsement, extending coverage to the use of some nonowned automobiles; a premium pay endorsement and an "other insurance endorsement."

② These include endorsements entitled "Nuclear Energy Liability Exclusion Agreement" and the "Limitation of Additional Interests," relating to injuries arising from the loading or unloading of vehicles.

automobile is physically operated by persons such as the named insured or his paid employees.

It is contended by defendant that the "garage endorsement" is the "meat of the policy" and provides that "Insuring Agreement III of the policy (the 'omnibus clause') does not apply." Thus, defendant contends that this endorsement limits coverage under the basic policy for the purpose of all of the Kellum's "garage operations," including the used car lot.

The schedule attached to the basic policy as its first endorsement, however, sets forth a "breakdown" of the premium charged for personal injury and property damage coverage under the basic policy and goes on to state that for "non-owned automobiles" and "hired automobiles" there is "no coverage for this hazard—except as provided by Garage Endorsement UU-3139." With reference to the coverage for "owned automobiles," (as also referred to under the "omnibus clause" of the basic "comprehensive liability policy") there is no provision to the effect that there is "no coverage for this hazard, except as provided by garage endorsement." On the contrary, it is expressly provided by this same schedule that coverage for "owned automobiles" is "subject to all the terms and conditions of this policy (referring to policy No. 756241, the 'Comprehensive Liability Policy') AND Form No. UU-3139 (the so-called 'Garage Endorsement')."

We have attempted to follow through the maze of policy provisions, endorsements, exceptions, and seemingly contradictory provisions. These include a broad definition of "insured" for the purpose of the basic "comprehensive liability policy" and as stated in its "omnibus clause," as compared with a more limited definition of that term in the "garage endorsement."

They also include an express limitation of coverage for "non-owned automobiles" and "hired automobiles" to coverage as provided by the "garage endorsement," while omitting any such limitation with respect to coverage for "owned automobiles," and providing, on the contrary, that such coverage is subject to all of the terms of *both* the basic policy and *also* the "garage endorsement."

■ Upon considering the basic "comprehensive liability policy" and its various endorsements, when "considered as a whole" (as defendant contends that we must do), we have concluded that the policy is reasonably subject to interpretation to the effect that the "garage endorsement" was not intended to either repeal or limit the application of the "omnibus clause" in the basic "comprehensive liability policy" insofar as "owned automobiles" were concerned.

It is well established, of course, that in the construction of an insurance policy, that interpretation which is most favorable to the insured must be adopted. *Reed v. Commercial Insurance Company,* 248 Or 152, 156, 432 P2d 691 (1967). Accordingly, we hold that even though Steele was not an employee of Kellum, nevertheless, and because at the time of the accident he was driving an automobile owned by Kellum Motors and with the permission of the manager in charge of its used car lot, he was a "person insured" within the definition of that term in the "omnibus clause" of the basic "comprehensive liability policy" and was thus an "insured person" under the facts of this case, as found by the trial court. Cf. *Johnson v. Doughty,* 236 Or 78, 79-80, 385 P2d 760 (1963).

We have read the cases cited by defendant in support of a contrary conclusion and find that they

are not in point, either because the policies involved did not contain an "omnibus clause,"[9] or because the endorsements involved were not "garage endorsements," but endorsements which clearly limited the insurance coverage.[10] Defendant also contends that "Oregon law does not require an automobile liability policy to contain an omnibus clause," except under certain circumstances not involved in this case. This may be true. The fact remains, however, that the policy in this case does include an "omnibus clause" and we hold that while coverage under that clause may have been limited by the "garage endorsement" for some purposes, such as for "non-owned automobiles" and "hired automobiles," the policy is reasonably subject to the interpretation that such coverage was not limited by the "garage endorsement" in accidents involving "owned automobiles," at least under the facts of this case.

## 2. *The Insurance Company Received Adequate "Notice" of the Accident.*

First of all, it would appear to be doubtful whether defendant's contention that it did not receive adequate "notice" is properly within defendant's sole

---

[9] Orth v. Universal Underwriters Insurance Company, 284 F2d 857, 858 (9th Cir 1960) (in which this same insurance company issued a policy with a "garage endorsement," but with no "omnibus clause"); Gray v. Maryland Casualty Company, 152 F Supp 520, 521 (DC ED Ill 1957); and Wylie v. Mountain Motors, 126 W Va 205, 27 SE2d 494, 495 (1943).

[10] Schaffer v. Mill Owners Mutual Insurance Company, 242 Or 150, 152, 407 P2d 614 (1965); Universal Underwriters Insurance Company v. Bush, 272 F2d 675, 677 (10th Cir 1959), (in which this same company, in issuing an endorsement which clearly limited coverage under the "omnibus clause," reduced the premium from that charged for the broader coverage under the "omnibus clause"), and Zurich Insurance Company v. Bouler, 198 So 2d 129 (LA App 1967).

212

remaining assignment of error, which complains primarily of lack of cooperation.⑥ Rule 19 of this court requires that "each assignment of error shall be clearly and succinctly stated under *separate* and appropriate headings." Furthermore, defendant's letter denying coverage did not state that it had not received notice of the accident, but only that Steele failed to cooperate by misrepresenting the facts relating to ownership of the car.

Aside from this, however, we agree with the trial court in its finding that on or about August 8, 1967, "approximately 16 days after the occurrence of the accident in question," defendant was furnished notice of the accident and that the information received by it substantially satisfied the terms of its policy of insurance.

■ On or about that date defendant was notified of the accident and that it "possibly involved your car." Defendant's agent then promptly undertook to

⑥ This assignment reads as follows:

"The court erred in concluding:

'In order for an insurance company to avoid liability to an injured third party under its policy of liability coverage on the grounds of noncooperation by the insured, it is necessary for the insurer to show that it has been prejudiced by the noncooperation.'

and refusing to adopt as a conclusion the defendant's proposed alternative conclusions of law as follows:

'(a) That Wilbert Steele breached the assistance and cooperation clause of defendant's policy, in that he wilfully, falsely and fraudulently misrepresented a material fact going to the very essence of coverage under defendant's policy.

'(3) That where there has been a willful, false and fraudulent misrepresentation of a material fact which leads an insurance company, in good faith, to believe there is no coverage afforded under its policy, and the company receives no notice of the true facts for 12 months no prejudice need be shown.

'(4) That nevertheless, in this case prejudice to the defendant has in fact been shown.' "

investigate, including the question whether the car and its driver were covered by the policy. It is true that Steele and Smith gave false information to defendant's agent, in violation of the cooperation clause of the policy, (as discussed below), but we cannot say that there was no substantial evidence to support the finding of fact by the trial judge that defendant received notice of the accident with "particulars sufficient to identify the insured" and also "reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses," so as to satisfy "notice" requirements of the policy.

Indeed, defendant makes no point of the fact that the information of which it received notice failed to satisfy the specific requirements of the "notice" provision of the policy or that such information was received from another source, instead of by "written notice * * * by or on behalf of the insured," except to the extent that defendant complains that the original statement by Steele that the car had been purchased by him on the day before the accident was false. Counsel also admits that the named insured, Kellum Motors (through Mr. Kellum and Mr. Rikke, his office manager) was "completely ignorant of and did not participate in the fabrication."

Thus, defendant contends that the false statement "went to the very heart of the question whether or not this appellant's policy afforded any coverage for the accident" and that the notice of the accident received by it was "no notice at all" in that it did not include "true and full facts sufficient to enable it to make a determination of first, whether the coverage of its policy is involved and, second, sufficient to per-

mit it to go forward with an investigation and afford its insured the benefits to which he is entitled under the policy."

In support of its contention that the absence of such notice avoids coverage of the policy and does not require a showing of any further prejudice to it, defendant cites *Hoffman v. Employer's Liability Assurance Corporation*, 146 Or 66, 81, 29 P2d 557 (1934); *Bonney v. Jones*, 249 Or 578, 439 P2d 881 (1968); and *Oregon Farm Bureau Insurance Company v. Safeco Insurance Company*, 249 Or 449, 438 P2d 1018 (1968). In all three of those cases, however, the insurance company received no notice whatever of the accident for over one year, so that they did not involve or establish requirements for the sufficiency of the notice of an accident received within a short period after the accident, as in this case.

On the contrary, the contention that a notice of the accident which includes material false statements is "no notice at all" was expressly rejected in the leading case of *Griffin v. Fidelity & Casualty Company*, 273 F2d 45, at 48 (5th Cir 1959).[9]

---

[9] The reason for the fallacy of such a contention, as well stated in Charleston Laundry Co. v. Ohio Farmers Indemnity Co., 89 F Supp 649, at 652-653 (SD W Va 1950), is that:

"The object of the notice required by the notice clause is to acquaint the insurance company with the occurrence of an accident, so that it may make proper investigation, and take such action as may be necessary to protect its interest. See 45 C.J.S., Insurance, § 982 (1) p. 1182. *Even when the policy requires notice 'with full particulars,' only such details need be included as will enable the insurer to determine whether a claim is likely to be made against the insured.* See 29 Am. Jur., p. 843. The notice given in the instant case satisfied these requirements. It contained a statement of the facts and circumstances surrounding the accident sufficient to inform defendant of the occurrence,

■ In this case, defendant was not only notified of the fact of the accident, but was informed by an agent for plaintiff's insurance company that the vehicle involved in the accident "possibly was owned by Kellum Motors, and it might be advisable for him at that time, to look into the matter." Furthermore, defendant's agent then was told by Steele of all of the circumstances of the accident, except the truth relating to the ownership of the vehicle involved. We believe that, under the circumstances of this case, this information was sufficient to support a finding by the trier of the fact that defendant was put on notice, not only of the fact of the accident, but also of the fact that "a claim is likely to be made against the insured."

In *Tierney v. Safeco Insurance Company*, 216 F Supp 590 (D Or 1963), it was contended that an almost identical notice provision was breached when the driver of the vehicle involved in an accident falsely

and to enable it to pursue its investigation. Defendant could readily ascertain from the notice that a claim was likely to be made against plaintiff. It is true that the notice falsely stated that Slaughter was driving, when in fact Johnson was the driver; and, the report being made by Slaughter in line of duty, if this falsification could be said to be a violation of the notice clause, and prejudicial to defendant, it would relieve defendant from liability. But we have seen that the purpose of that clause in requiring notice is fulfilled when the insurance company is advised of the occurrence of the accident. Since it is unnecessary that any details of the accident be given in order to comply with the notice clause, then such details as may be set out in the notice, even though falsely related, are equivalent to mere surplusage. The notice as given complied substantially with the policy provisions and general requirements as to giving of notice. Such substantial compliance usually is sufficient. See 45 C.J.S., Insurance, § 1088, p. 1323. *The one false statement made here did not, under the notice clause, invalidate the policy, since substantial compliance was effected, and the general requirements as to giving of notice satisfied.*" (Emphasis added.)

informed the insurance company agent that he was not driving the car at the time, instead of informing him that the vehicle was owned by him at the time, as in this case. That contention was rejected by J. Kilkenney, although other facts of the case were somewhat different and the case was controlled by the law of Washington.

This result is also in accord with the decision of this court in *Johnson v. Doughty*, 236 Or 78, 385 P2d 760 (1963), in which (although not in point on its facts) we held, at p 82, that:

> "Since the insurer had notice of the collision from other sources, its right to notice was not prejudiced by Doughty's failure to give notice."

In that case, as noted in *Bonney v. Jones*, 249 Or 578, 580, 439 P2d 881 (1968), we held open the question whether the insurer must show prejudice where it has actual notice of an accident and seeks to avoid coverage on the ground that such notice was not given by the person involved in the accident.

In this case we hold, however, that when the insurer had actual notice of the accident, including most of the circumstances of the accident, and undertook to investigate it, the fact that such notice was not given by the named insured is wholly immaterial. We also hold that in such a case the further fact that a false statement of a material fact was made to the insurer must be viewed and considered as a matter involving a breach of the insurance policy provisions requiring cooperation by the insured, as next discussed, rather than as one involving a breach of the contract provision requiring notice of the accident. This is particularly true in this case because the only applicable assignment of error was cast in terms relating

to breach of the cooperation clause of the policy and the letter denying coverage was also on that limited ground.

3. *Lack of Cooperation by the Insured is Not a Defense Unless the Insurer Proves that it Suffered Prejudice as a Result.*

Defendant's next contention is that the trial court erred in holding that for defendant, as an insurer, to avoid liability to plaintiff, as an injured third party, on the grounds of the non-cooperation of the insured, defendant must show that it was prejudiced as the result of such non-cooperation.

In his comments from the bench at the conclusion of trial, the trial judge expressed his desire "to place squarely before the Oregon Supreme Court" the question "whether there must be prejudice shown and proven in the event of a material misrepresentation by an assured, be he a named insured, or a person who becomes an insured under the policy terms."

In *Riggs v. New Jersey Fidelity and Plate Glass Company*, 126 Or 404, 270 P 479 (1928), also a case involving an alleged defense that the insured failed to cooperate with the insurance company, this court stated, at p 413:

> "In order for the answer to constitute a defense it would show that the assured failed, in some substantial or material particular or particulars, to co-operate with and assist the company in the defense of an action for damages covered by the policy, so that apparently the trial resulted in a judgment which was in whole or in part wrong, or, in other words, *that the interests of the defendant company were prejudiced in the defense of the personal injury action.*" (Emphasis added)

Our subsequent decision in *Allegretto v. Oregon Auto Insurance Co.*, 140 Or 538, 13 P2d 647 (1932), has sometimes been construed to the contrary. Even in that case, however, it was held (at p 541) that the misrepresentation must be one which "substantially affects the rights of the insurer," although it was stated (at p 542) that "we think it is going too far to say that it must be shown that the misrepresentation affected the verdict." The court also was quite clearly convinced that prejudice had been shown in that case (see p 543). See also 12 Or L Rev 256, 258 (1933).

In the more recent case of *Johnson v. Doughty*, 236 Or 78, 385 P2d 760 (1963), this court seemed to assume that prejudice must be shown, as indicated by its statement (at p 80) that:

> "A failure by the insured to cooperate with the insurer is a breach of the contract, *and, if prejudice to the insured is proven*, amounts to a defense that will relieve the insurer of its duties under the policy." (Emphasis added)

In *State Farm Mutual Automobile Insurance Company v. Farmers Insurance Exchange*, 238 Or 285, 387 P2d 825, 393 P2d 768 (1964), the court did not reach the question whether prejudice must be shown, but ruled that the insurer had not shown due diligence to obtain cooperation from the insured by his presence at trial. The dissenting opinion (at p 299-300) clearly recognized, however, that prejudice must be shown under the rule as previously adopted by this court.

Both the United States Court of Appeals for the Ninth Circuit and the United States District Court for the District of Oregon have also held that under the law of Oregon prejudice to the insurer must be shown. *Pacific Indemnity Company v. McDonald*, 107

F2d 446, 450 (9th Cir 1939); *Tierney v. Safeco Insurance Company of America*, 216 F Supp 590 (D Or 1963).

■ Accordingly, and if there has been any doubt as to the position of this court on this question, we now expressly recognize the rule that in order for non-cooperation to provide a defense, whether by a named insured or by a person who becomes an insured under the terms of the insurance policy, the insurance company has the burden to plead and prove that it has suffered prejudice as a result. To the extent that *Allegretto* may be construed as holding to the contrary, that case is overruled.

Applying these rules to this case, it would appear that if defendant is entitled to urge the defense of non-cooperation it would then follow from the fact that a default judgment was entered against Steele that defendant was prejudiced, as a matter of law, unless defendant could and should have made application to set aside that judgment upon learning the true facts. The trial court held in this case, however, that since defendant did not make such an application it cannot contend that it was prejudiced by entry of the default judgment.

ORS 18.160 provides that "the court may, in its discretion * * * relieve a party from a judgment * * * taken against him through his mistake, inadvertance, surprise or excusable neglect." We have held that this statute is to be liberally construed "in a manner to subserve and not to defeat or impede the ends of substantial justice." *Peters v. Dietrich*, 145 Or 589, 594, 27 P2d 1015 (1934).

■ It may be that under the facts of this case the defendant insurance company, if it had proper stand-

ing to apply for such relief, could have made a showing of "surprise or excusable neglect" sufficient to sustain an order by a trial judge, in the exercise of his discretion, setting aside the default judgment in this case as necessary or appropriate "to serve the ends of substantial justice." It is the general rule, however, that only a party may seek to set aside a default judgment and that "strangers to the record" ordinarily have no standing on which to base such an application.

It is significant that ORS 18.160, in providing that the court "may relieve a party from a judgment" does not provide that the application for such relief must be made by the party himself. It is also significant that while there are no Oregon cases directly in point, this court held in *Fildew v. Milner*, 57 Or 16, 21-22, 109 P 1092 (1910) that it was proper for a trial court to set aside a default judgment on application by the grantees of property which was the subject matter of the suit. In that case the application was made in the name of both the named defendant and the grantees of the property involved. See also *Liston v. Butler*, 4 Ariz App 460, 421 P2d 542 (1967). But see *Dudley v. Dickie*, 281 F2d 360 (9th Cir 1960).

■ It may be that if a motion to set aside the default judgment had been filed in this case in the name of both defendant insurance company and Steele, the "named insured," (as in *Fildew v. Milner*) and if that motion had been supported by an affidavit setting forth the facts and circumstances of this case, a trial judge, in the exercise of his discretion, could have properly set aside the default judgment so as not to "defeat or impede the ends of substantial justice." In any event, however, since the trial judge was not required to do so, we still must hold that defendant was prejudiced, as a matter of law, by the entry of that

judgment, without considering in what other ways it may also have been prejudiced.

4. *Non-cooperation by Insured is Not a Defense Unless Insurer Has Acted With Reasonable Diligence and Good Faith.*

Even though defendant was prejudiced by the entry of the default judgment, it still does not necessarily follow that plaintiff was barred from recovery if the trial court was correct in holding, at least in effect, that defendant had a duty to make a good faith and diligent investigation of this accident and failed to perform that duty.

Thus, plaintiff contends on this appeal that after defendant was notified of the accident and was told by Steele that he had purchased the car the day before the accident it made no more than a "hear no evil, see no evil investigation" of the case. Defendant contends, on the contrary, that it was entitled to rely upon the statements by Steele and that to hold to the contrary "would place the insurance industry in a ridiculous and precarious position in the conduct of its affairs."

In *Imperiali v. Pica*, 338 Mass 494, 498, 156 NE2d 44 (1959), it was held, at p 47, that:

"* * * an insurer cannot be relieved of liability because of an alleged breach of cooperation clause by the insured in a situation where it has not itself exercised diligence and good faith. * * * Elementary principles of justice and fair dealing require such a rule. The obligations under a cooperation clause are reciprocal."

To the same effect see: *Pennsylvania Threshermen and Farmers Mutual Casualty Insurance Co. v.*

*Owens*, 238 F2d 549, 550-551 (4th Cir 1956); *Iowa Home Mutual Casualty Co. v. Fulkerson*, 255 F2d 242 (10th Cir 1958); *Carpenter v. Superior Court*, 101 Ariz 565, 422 P2d 129, 132, 134 (1967); *Ray v. Johnson*, 81 Ill App 2d 456, 225 NE2d 158 (1967); *Allstate Insurance Co. v. Coe*, 248 NYS2d 29, 21 AD2d 34 (1964); *Oberhansly v. Travelers Insurance Co.*, 5 Utah 2d 15, 295 P2d 1093 (1956); see also *Tennessee Farmers Mutual Insurance Co. v. Wood*, 277 F2d 21, 34 (6th Cir 1960).

■ This court, in *State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Exchange*, 238 Or 285, 387 P2d 825, 393 P2d 768 (1964), recognized this same rule, at least in effect, in holding, at p 293, that:

> "We are holding that an insurer must make a substantial showing of diligence before it can successfully rely on the defense of non-cooperation."

See also *Johnson v. Doughty*, 236 Or 78, 82, 84, 385 P2d 760 (1963).

The reason for this rule, at least in cases involving claims against insurers by injured third parties, as stated in *Wallace v. Universal Insurance Company*, 238 NYS2d 379, 18 AD2d 121 (1963), at p 381, is that:

> "* * * The insurer's responsibility under the cooperation clause must be viewed in the frame of the State's emphasized solicitude for the victims of automobile accidents * * *. Such an emerging responsibility blends with the general legislative purpose, as well as with the anticipations of insurers entirely aware of that purpose; * * *."

To the same effect, see *Barrera v. State Farm Mutual Automobile Insurance Co.*, 79 Cal Rptr 106, 456 P2d 674, at 683-84 (1969); *Peterson v. Western*

*Casualty and Surety Co.*, 19 Utah 2d 26, 425 P2d 769, 771 (1967), and *Pennsylvania Threshermen and Farmers Mutual Casualty Insurance Co. v. Owens, supra*, at 550. See also *Farley v. Farmers Insurance Exchange*, 91 Id. 37, 415 P2d 680 (1966); *Deblon v. Beaton*, 103 NJ Super 345, 247 A2d 172, 175 (1968); *MFA Mutual Insurance Co. v. Sailors*, 180 Neb 201, 141 NW2d 846, 849 (1966).

Again, this court in *State Farm*, at p 293, expressly recognized:

"* * * a governmental policy in favor of protecting the innocent victims of vehicular accidents even though the tortfeasor may have been totally indifferent to the rights of others."

As also held in *Barrera v. State Farm Mutual Automobile Insurance Co., supra*, at 682:

"The reasonable expectation of both the public and the insured is that the insurer will duly perform its basic commitment: to provide insurance * * * 'insurance companies are engaged in the business of running risks for pay * * *'."

Conversely, as held in *Carpenter v. Superior Court, supra*, at 136, quoting with approval from *Comunale v. Traders and General Insurance Co.*, 50 Cal 2d 654, 328 P2d 198 (1958):

"* * * An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract * * *."

For reasons of public policy, the same result also follows in cases involving liability to persons injured by negligence of the insured.

■ In such cases, the standard to be used in determining whether the insurer has discharged his duty to exercise reasonable diligence is as stated in *Peterson v. Western Casualty and Surety Co.*, *supra*, at 771-72, as follows:

"* * * In view of the anomalous situation where the insurance company has received compensation for undertaking a responsibility which it may be able to avoid by failing to discharge one part of its duty, it is proper to require a showing that the company used the same degree of diligence to secure the insured's cooperation that would have been exercised by a reasonable and prudent person where the cooperation of the insured would be to its advantage in protecting it against liability, rather than to relieve it therefrom. We believe this requirement that the insurer exercise the same diligence as it would exercise to protect its own interests, if there were no advantage to be gained if cooperation fails, is a fair and reasonable standard to apply in such situations and is not unduly burdensome to insurers."

See also *Kuzmanich v. United Fire and Casualty Co.*, 242 Or 529, 532, 410 P2d 812 (1966).

To the same effect, see *Tennessee Farmers Mutual Insurance Co. v. Wood*, *supra*, at 34, (an excess liability case) in which the court went on to hold, at p 35:

"Since the claim against the insured exceeded the policy limits, a conflict of interests arose between the insurer, as agent, and the insured, as principal; and the insurance company's conduct in such a case is subject to closer scrutiny than that of the ordinary agent, because of its adverse interests."

This same conflict of interest was recognized by this court in *State Farm*, *supra*, at 290-91.

■ Since the insurer is the party who is seeking to avoid the burdens of the insurance contract by alleging the defense of non-cooperation, it follows that the insurer has the burden to establish all of the elements of that defense, including the performance of its duty to exercise reasonable diligence and good faith. *Carpenter v. Superior Court, supra,* at 132; *Peterson v. Western Casualty & Surety Co.,* supra, at 770. See also *Allstate Insurance Co. v. Coe, supra,* at 32, and cases cited therein. To the same effect, see the decision of this court in *State Farm, supra,* at 297.

■ The question of whether, in such a case, the insurer has exercised reasonable diligence and good faith is ordinarily a question of fact for the jury or other trier of the facts and its determination of that issue will not be reversed on appeal if supported by any substantial evidence. See *Barrera v. State Farm Mutual Automobile Insurance Co., supra,* at 689, and *Evans v. American Home Assurance Co.,* 252 SC 417, 166 SE2d 811 (1969). See also *Tennessee Farmers Mutual Insurance Co. v. Wood, supra,* at 35 and *Maryland Casualty Co. v. Hallatt,* 326 F2d 275, 277 (5th Cir 1964). Cf. *Kuzmanich v. United Fire and Casualty Co., supra,* at 532.

It is also to be remembered that in determining whether to affirm a determination by the trier of the facts that the insurer did not sustain his burden to establish the defense of non-cooperation, including its burden to prove that it discharged its duty to exercise reasonable diligence and good faith, that question is to be decided in the light of the particular facts and circumstances of each case. See *Cyr v. American Guarantee and Liability Insurance Co.,* 242 F2d 8, 13 (2d Cir 1957), and *Modl v. National Farmers Union*

*Property and Casualty Co.*, 272 Wis 650, 76 NW2d 599, 602 (1956).

Before applying the foregoing rules of law to the facts of this case, it should be noted that no case has been cited involving similar facts. There are, however, cases in which the courts have held that where an insurer contends that the insured has failed to co-operate by failing to attend the trial and give testimony, it must exercise a high degree of diligence in making efforts to locate the insured, including inquiries at all former addresses and from employers, neighbors and relatives, as well as by checking official records and reports, and that a finding that the insurer has failed to sustain its burden to prove performance of its duty to exercise reasonable diligence and good faith will not be reversed on appeal, if supported by substantial evidence. *Thrasher v. United States Liability Insurance Co.*, 19 NY2d 159, 225 NE2d 503, at 508 (1967); *Cohen v. East Coast Insurance Co.*, 283 NYS2d 371, 373 (1967); *Wallace v. Universal Insurance Co.*, *supra*, at 382-83; *Nationwide Mutual Insurance Co. v. Burka*, 134 A2d 89 (DC 1957). See also the decision by this court in *State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Exchange*, *supra*, at 294-96.

■ For all of the foregoing reasons, we hold that the defendant insurance company owed a duty to make a diligent investigation of the accident involved in this case, and one in good faith, including the question whether the vehicle involved was covered by the policy issued by defendant. The more difficult question is whether, under the facts of this case, the defendant discharged its obligation to perform that duty.

5. *Under the Facts of This Case, Defendant Insurance Company Performed its Duty to Make a Diligent and Good Faith Investigation of the Accident.*

In determining whether defendant performed or failed to perform its duty to make a diligent and good faith investigation of the accident in this case, on appeal from a plaintiff's judgment, we must, of course, consider the facts most favorable to plaintiffs, as we shall now proceed to do.

As previously stated, shortly after the accident in this case defendant was notified by a representative of plaintiff's insurance company not only of the fact of the accident, but that it involved a vehicle "that possibly was owned by Kellum Motors, and it might be advisable for him * * * to look into the matter." Later, plaintiff's complaint alleged, as a fact, that the car was owned by Kellum Motors. Thus, defendant was put on notice that plaintiff seriously contended that the car was owned by Kellum at the time of the accident.

Defendant then undertook to make an investigation of the case. Defendant's agent first then went to Kellum Motors, where he examined and was given a copy of the car order and the retail installment contract. He noted the alteration of the date on the car order and was told by the bookkeeper that the alteration was made "for financing reasons only." He did not examine or take copies of any additional records.

Defendant's agent did, however, then interview both Steele and Smith, the used car lot manager, and they both told him that the car was sold to Steele on the day before the accident. He did not check the accident report, which showed that the vehicle was owned by Kellum Motors at the time of the accident.

Neither did he interview the officer who prepared that report, based upon a statement to that effect by Steele shortly after the accident and while the facts were fresh in his mind. Instead, defendant's agent terminated his investigation and recommended to defendant that it deny coverage.

■ We recognize that these facts present an extremely close case. We cannot escape the conclusion, however, that defendant performed its duty to make a diligent and good faith investigation of this matter. To be more specific, we hold that after defendant's investigator, in the course of his investigation, was told by both Steele and by Smith, the used car manager (later repeated under oath on deposition), that the vehicle had been sold to Steele prior to the accident and after he was told the same thing by Kellum's bookkeeper, who also gave a plausible explanation for the alterations appearing on the records, defendant was entitled to rely upon such statements. In other words, we hold that under the facts of this particular case there was no substantial evidence that defendant suspected, or had any good reason to suspect, that both Steele and Smith had deliberately lied to its investigator or that Kellum's records had been falsified, so as to require defendant to make a further investigation of the matter.

Accordingly, under these facts and for these reasons, it follows that the judgment in favor of plaintiff must be reversed and the case dismissed.

Reversed.

**ON RESPONDENT'S REQUEST FOR RECONSIDERATION AND ALTERNATIVE MOTIONS TO REMAND AND FOR REMITTITUR AND MOTION TO STAY MANDATE**

Ferris F. Boothe, Portland, for the request.

PER CURIAM.

Plaintiff previously filed a petition for rehearing which was denied. She then requested and was granted a stay of the mandate of this court for the purpose of allowing time in which to file a petition for a writ of certiorari in the Supreme Court of the United States. She now files a document entitled "Request for Reconsideration and Alternative Mo-

tions to Remand and for Remitittur [sic] and Motion to Stay Mandate."

The rules of procedure of this court do not provide for such further proceedings after the denial of a petition for rehearing except for an application for a further stay of the mandate. Therefore, all requests for further action by this court are denied except that the mandate of this court will be stayed an additional twenty days from March 17, 1971, so that plaintiff may prepare and file a petition for a writ of certiorari in the Supreme Court of the United States, if she so desires.

TONGUE, J., specially concurring.

Following denial of a petition for rehearing, plaintiff requested, and was granted, a stay of the mandate for the purpose of filing in the Supreme Court of the United States a petition for writ of certiorari. Instead, plaintiff has now filed a "Request for Reconsideration and Alternative Motions to Remand and for Remitittur [sic] and Motion to Stay Mandate."

After the denial of a petition for rehearing, such further "requests" and motions have no standing under the Rules of Procedure of this court and must, therefore, be denied, as held by the majority. Because of the serious nature of the charges made by plaintiff in support of her present motions, however, I am of the view that these charges should be set forth, together with a statement of further reason why plaintiff's present motions must be denied.

Plaintiff's charge that "the determinations of this court on the issues of (1) prejudice to the defendant insurance company and (2) its right to rely on its investigation (i.e., whether it performed its duty to

make a reasonably diligent investigation) constitutes reversals of findings of fact by a trial court based upon legally sufficient evidence" and, therefore, not only "exceed the constitutional and statutory review power of this court," but violate the "due process" guarantees of the Fourteenth Amendment to the Constitution of the United States, by taking away from this seriously injured plaintiff a judgment for $19,957.72 and by depriving plaintiff of the opportunity to present evidence on the issue of prejudice.

In particular, plaintiff complains that although it was held by this court that defendant had the burden to establish prejudice, that "prejudice from this source was never pleaded by defendant" and "defendant had never put in any evidence of prejudice" and made no assignment of error on that issue. Thus, plaintiff contends that this court erred in concluding that because a trial court was not *required* to set aside the default judgment upon a motion made by defendant, either directly or through its insured, Wilbert Steele, it followed that defendant was prejudiced as a matter of law by the entry of that judgment, despite express findings by the trial court that defendant was not prejudiced.

To the same effect, plaintiff moves, in the alternative, that the case either be remanded to the trial court in order that evidence may be offered on the issue of prejudice or that it be "remitted" so as to permit the parties to stipulate that the default judgment taken by plaintiff against Wilbert Steele, defendant's insured, be set aside "in order to permit a trial on the merits of that cause," at which plaintiff would make available to defendant "all statements of witnesses taken in connection with her investigation of the accident," among other things. Plaintiff con-

tends that such a "remittitur" is authorized by Art VII, § 3 (Amended) of the Constitution of Oregon.

Plaintiff's counsel also has submitted an affidavit setting forth various facts not of record in that case and stating that unless this court grants the relief demanded by plaintiff he will have "no alternative" but to file an action "at the federal district court level" against the members of this court for "exceeding their jurisdictional limitations."

First of all, it should be made clear, in view of the nature of the charges made by plaintiff (and I am sure that the majority will agree), that it gives this court no pleasure to set aside a judgment for an injured plaintiff in a personal injury case and that this court also does not claim the gift of infallibility. It is our duty, however, to apply the law of Oregon, as best we can, to all cases coming before this court, regardless of the outcome.

Next, it should be noted that in this case defendant's answer, after alleging that Wilbert Steele had represented to defendant that he (instead of Kellum Motors, the named insured) was the owner of the vehicle involved in the accident, expressly pleaded prejudice, including prejudice from entry of the default judgment, as follows:

"That said representations were material, false and fraudulent, and were willfully made with intent to deceive defendant, and in reliance thereon the defendant was led to conclude that its policy did not afford coverage for the said Wilbert Steele, after an investigation was made by the defendant's representative; that the defendant in reliance on said representations was not afforded the opportunity to investigate and defend said action *and a default judgment was entered against the defendant Wilbert Steele*; that it was not afforded an

opportunity to properly and adequately place a claim reserve on the file, *all to the defendant's prejudice.*" (Emphasis added)

During the course of the trial a copy of that default judgment was offered in evidence by plaintiff's counsel in his opening case. Thus, there was evidence to support this allegation without offer of that evidence by defendant. Also, defendant's first assignment of error on appeal was that the trial court erred, among other things, in refusing to adopt defendant's proposed conclusion of law that "prejudice to the defendant has in fact been shown."

It is true that the trial court purported to make a finding of fact that defendant was not prejudiced because it had "ample opportunity under Oregon law to set aside the default judgment upon showing of good cause which would have existed in this case." In my view, however, this was not a true finding of fact, but was, at most, a conclusion of law, and an incorrect conclusion of law.

When a plaintiff in an action for personal injuries against a defendant who is covered by insurance takes a default judgment against the defendant, the insurance company is thereby prejudiced, as a matter of law. This might not be true if the insurance company had a *right* to demand that the default judgment be set aside, but failed to exercise such a right. In Oregon, however, for reasons pointed out in our original opinion, an insurance company has no such right and, in addition, the court which entered the default judgment has discretion whether or not to set a default judgment aside.

For these very reasons, counsel who represent plaintiffs in personal injury cases in which it appears

that there may be possible grounds for so-called "policy defenses" by insurance companies based on "non-cooperation" by insured drivers by the making of statements to the insurance companies which may be false, usually proceed with extreme caution so as not to provide such a defense to the insurance company. Cases in which the insured has falsely stated that another person was the driver of the insured vehicle are one example of such cases. In such a case plaintiff's counsel who learns of such a false statement may deem it advisable to inform the insurance company of the possible falsity of such a statement, in order to forestall such a defense.

In this case, however, plaintiff's attorney, by his present affidavit, was suspicious that Steele falsely stated that he was the purchaser and owner of the insured vehicle long before the entry of the default judgment, so as to be fully aware of the possibility of a "policy defense." He nevertheless proceeded to take the default judgment and then filed an action against the insurance company for the amount of the judgment before informing counsel for the insurance company of his suspicions.

As stated in our previous opinion, the trial judge was not required to set aside that judgment, but retained the discretion to decline to do so, particularly since the insurance company was not a party to this action against Steele and Steele, since he had lied, was hardly in a position to ask that the default judgment be set aside. Thus, as held in that opinion, the entry of that judgment, on request of plaintiff, against the driver of the vehicle covered by insurance resulted in substantial prejudice to the insurance company.

For reasons stated in our previous opinion, however, this court then went on to hold that even if an insurance company is prejudiced as the result of "non-cooperation" by an insured, the company may not be entitled to claim such a "policy defense" if it has failed to make a diligent investigation of the facts. Thus, if such an investigation would have disclosed the false statement by Steele, defendant can hardly complain of the entry of the default judgment. The application of such a rule depends, of course, upon the facts of each particular case.

It is true, of course, that the trial judge made a finding of fact that further investigation by defendant would have revealed discrepancies in the statement by Steele that he had purchased the car from Kellum Motors prior to the accident and was its owner at that time. It is also true, as stated in our previous opinion, that it was a very close question whether there was substantial evidence to support a finding, as required under Art VII, § 3 (Amended), that defendant failed to perform its duty to make a reasonably diligent investigation of the facts of this case. On petition for rehearing three members of the court, including the writer of this opinion, were of the view that a rehearing should have been granted so as to reconsider that question. The remaining members of the court, however, were of the contrary view.

In my opinion, however, while both our original decision, as well as our disposition of plaintiff's subsequent petition and motions, may be subject to criticism by plaintiff, there is no basis for the suggestion that this court has exceeded its "review powers" or "jurisdictional limits," as now contended by plaintiff. While such powers should be exercised

with restraint, it is always a matter for judicial determination by this court whether evidence contended to support a finding of fact by a trial judge is substantial evidence, just as it is always a matter for judicial determination whether a jury verdict is supported by substantial evidence. Neither can we agree with plaintiff's contention that it is the duty of this court "to remedy the unhappy situation it has created." While I fully agree that this is an "unhappy situation," it is one for which the parties themselves, including plaintiff, must acknowledge at least substantial responsibility.

For all of these reasons, I concur with the decision of the majority that this court, having previously denied plaintiff's petition for rehearing, cannot properly reconsider the same questions for a third time under plaintiff's present motions, particularly at this late date.