Argued and submitted May 8, 1987, resubmitted In Banc February 3, affirmed
April 13, reconsideration denied June 3, petition for review denied June 21, 1988
(306 Or 101)

# GRANGE INSURANCE ASSOCIATION,
*Respondent,*

*v.*

# BELEKE et al,
*Defendants,*

# DUMAS et al,
*Appellants.*

## (16-84-07998; CA A40169)

752 P2d 864

Frank E. Bocci, Eugene, argued the cause and filed the brief for appellants.

Bruce L. Mowery, Portland, argued the cause and filed the brief for respondent.

BUTTLER, J.

## BUTTLER, J.

Defendants Dumas and Farmers Insurance Group appeal from a judgment granting declaratory relief to plaintiff, Grange Insurance Association, determining that plaintiff's automobile liability insurance policy does not cover any claims by appellants arising out of an automobile accident. We affirm.

Plaintiff was the insurer of several automobiles owned and driven by defendants Harold, Sandra and Lesa Beleke. On April 26, 1982, plaintiff added to the Belekes' policy, at Sandra's request, a 1966 Ford Mustang that apparently had been owned previously by defendant Haynie. Haynie had transferred ownership of the car to the Belekes in order to reduce his insurance premiums. On October 9, 1982, Haynie was driving the Mustang when, as a result of his negligence, an accident occurred with a vehicle being driven by Dumas, who was insured under a policy issued by Farmers.

Plaintiff brought this declaratory judgment action, alleging that its policy with the Belekes did not cover Haynie's accident, because the policy was issued as a result of misrepresentations made by the policyholders regarding the ownership and use of the vehicle. An order of default was entered against the Belekes and Haynie for want of an answer, followed by a judgment that disposed only of the claims against the insureds. After a trial consisting only of arguments presented by counsel, the court entered a final judgment declaring that plaintiff is not responsible under its policy with the Belekes for Dumas' injuries incurred in the accident with Haynie.

On appeal, Dumas and Farmers contend first that the trial court erred in holding that *former* ORS 486.551 does not apply to plaintiff's policy. It provided:

"The liability of an insurance carrier with respect to the insurance policy required by this chapter to prove future responsibility shall become absolute whenever injury or damage covered by the vehicle liability policy occurs. The policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage. No statement made by the insured or on his behalf and in violation of the policy shall defeat or void the policy. *The provisions of this*

*section are not applicable to policies of vehicle liability insurance other than those required in connection with proof of future responsibility."* (Emphasis supplied.)

That statute clearly distinguishes between policies of vehicle liability insurance required in connection with proof of *future* responsibility and other such policies not required for that purpose. *Former* ORS 486.075 prohibited a person from driving a motor vehicle registered in this state unless the person was insured under a motor vehicle liability insurance policy or provided the division other satisfactory proof of financial responsibility. *See former* ORS 486.011(7).

If a driver had an automobile accident that resulted in property damage of more than $400 or injury or death to any person, *former* ORS 486.021 required the driver and the owner of the vehicle involved to file within 30 days "and thereafter maintain for a period of three years proof of *future* responsibility," *unless* the vehicle was insured as required by law. If a person failed to file "proof of future responsibility when such proof is required," the division was required to revoke the person's license. *Former* ORS 486.211. If the person complied with the requirement of proving *future* responsibility, the proof was returned to the person, and the requirement of the filing was waived if

"[a]t any time after three years from the date such proof was required when, during the one-year period preceding the request, the division has not received record of a conviction which would require or permit the suspension or revocation of the license or registration of the person by or for whom such proof was furnished." *Former* ORS 486.431(1)(d).

Accordingly, even though there existed a mandatory financial responsibility law under which all vehicles were required to carry a minimum amount of insurance, the requirement that proof of *future* responsibility be filed under certain circumstances was maintained, and the distinction between "future responsibility" and "financial responsibility" remained in *former* ORS 486.011(7), although the minimum amounts required for each were the same.

Because *former* ORS 486.551 and *former* ORS 486.021 concern the same subject and use the same language, proof of *future* responsibility, they should be given the same meaning. *Davis v. Wasco IED,* 286 Or 261, 593 P2d 1152

(1979). It is clear that, under *former* ORS 486.551, the insurer's liability is absolute after injury or damage with respect to policies issued as proof of *future* responsibility. *Rowley v. Dairyland Ins. Co.,* 44 Or App 333, 605 P2d 1356 (1980). It is equally clear that, giving *former* ORS 486.551 its plain meaning, that statute does not apply to vehicle liability insurance policies *other than* those required as proof of *future* responsibility. The insurance policy in question here is not such a policy. Accordingly, we hold that plaintiff is not precluded by *former* ORS 486.551 from asserting that the insured made material misrepresentations in their application for insurance.

■  Next, appellants contend that the trial court erred in holding that their ability to recover from plaintiff depends on the ability of the Belekes and Haynie to do so. In *Allegretto v. Or. Auto Ins. Co.,* 140 Or 538, 13 P2d 647 (1932), Allegretto had obtained a judgment against Harris, the insured of Oregon Auto, as a result of an accident caused by Harris' negligence. Because Harris was unable to satisfy the judgment, Allegretto brought an action against Oregon Auto, which raised as a defense that the insured had made false statements to it during the initial defense of the claim and, therefore, had breached the policy by failing to cooperate with the insurer. The court recognized that Allegretto's right to recover against Oregon Auto depended on whether Harris could recover under the policy:

> "The overwhelming weight of authority establishes that the plaintiff's rights are subrogated to those of the insured. The action is predicated on a contract of insurance and it seems obvious that, if one of the parties thereto has forfeited his rights therein, the plaintiff, who has only a beneficial interest, has no foundation for his action. We test the rights of the plaintiff by whether or not Harris, upon satisfaction of the judgment against him, could have recovered upon the policy." 140 Or at 544.

Although *Allegretto* was overruled on another point in *Bailey v. Universal Underwriters Ins.,* 258 Or 201, 219, 474 P2d 746, 482 P2d 158 (1970), its holding on the question at issue here remains valid. *State Farm Fire & Cas. v. Reuter,* 299 Or 155, 166, 700 P2d 236 (1985). *State Farm Fire v. Sevier,* 272 Or 278, 537 P2d 88 (1975), relied on by appellants, is not to the contrary. Accordingly, appellants' right to recover against

plaintiff depends on the ability of the Belekes and Haynie to do so.

Finally, appellants assign error to the trial court's ruling that the default judgment against the Belekes and Haynie was an admission of the alleged misrepresentations. They contend that, because that judgment did not adjudicate the rights of all of the parties and did not comply with ORCP 67B, it was not final and the action was not terminated.[1] Accordingly, they argue that plaintiff must prove the misrepresentation allegation in the trial against them.

■■  A primary purpose of ORCP 67B is to allow appeals under certain conditions when an action involves multiple parties or multiple claims or both. *State ex rel Zidell v. Jones,* 301 Or 79, 95, 720 P2d 350 (1986). Because the default judgment was entered for want of an answer, the defaulted parties did not have a right to appeal, even if the judgment complied with ORCP 67B, unless the relief was not in accordance with the relief demanded in the complaint, ORS 19.020,[2] or the trial court did not have jurisdiction to enter the judgment. *Rajneesh Foundation v. McGreer,* 303 Or 139, 734 P2d 871, *aff'd* 303 Or 371, 737 P2d 593 (1987). No such claim is made here. In *McGreer,* the trial court had entered an order of default, but not a judgment, as a sanction for a discovery violation, before the defaulted party filed a motion to dismiss for failure to state ultimate facts sufficient to constitute a claim. ORCP 21A(8). The Supreme Court held that the trial court could entertain such a motion, with the limitation that, "[o]nce the [default] judgment has been entered and the time for appeal has expired, the defaulting party has no recourse unless the trial court lacked jurisdiction to enter the judgment." 303 Or at 144 n 3.

---

[1] ORCP 67B provides that, in order for a judgment adjudicating the rights of fewer than all of the parties to an action to be final, it must be accompanied by an express determination that there is no just reason for delay and must direct the entry of judgment.

[2] ORS 19.020 provides:

"Any party to a judgment or decree, other than a judgment or decree given by confession or for want of an answer, may appeal therefrom. The plaintiff may appeal from a judgment or decree given by confession or for want of an answer where such judgment or decree is not in accordance with the relief demanded in the complaint. The party appealing is known as the appellant, and the adverse party as the respondent; but the title of the action or suit is not changed in consequence of the appeals."

■    Here, there is no claim that the complaint fails to state sufficient facts to constitute a claim, and none of the parties filed a motion under ORCP 21A(8) at any time, assuming that any of them could have done so after the default judgment was entered. Neither have any of the parties moved to set aside the judgment pursuant to ORCP 71B and C. Although the default judgment was subject to revision at any time before the entry of a final judgment, ORCP 67B, it was not revised, and none of the parties made any effort to have it revised. Unless and until the default judgment was revised or set aside, it determined the rights between plaintiff and the Belekes and Haynie,[3] *see Ketcham v. Selles,* 304 Or 529, 748 P2d 67 (1987), because it established all of the material facts alleged in the complaint. *State ex rel Nilsen v. Bean,* 218 Or 506, 511, 346 P2d 652 (1959); *Rajneesh Foundation v. McGreer, supra,* 303 Or at 142.

The default judgment declared that "there is no coverage under plaintiff's policy of insurance for any injuries or damages arising out of the subject automobile accident." Because appellants' rights are no greater than those of the Belekes and Haynie, final judgment against all defendants was proper.[4]

Affirmed.

**WARDEN, J.,** dissenting.

The majority would deprive an injured person of the benefits of the tortfeasor's insurance policy, on the basis of the tortfeasor's misconduct, in the face of a contrary statutory

---

[3] The dissent, relying on footnote 10 in *State Farm Fire & Cas. v. Reuter, supra,* would hold that appellants are not precluded by the default judgment, because the issue of misrepresentation was not actually litigated. First, that contention was not made either in the trial court or in this court. Second, the contention is wrong. In *Reuter,* if the issue had not been litigated in the earlier criminal action, then neither Reuter, the insured, nor the injured party would have been precluded from litigating the issue in the pending lawsuit. Here, the Belekes and Haynie, the insureds, *are* precluded by the default judgment against them from litigating the issue in this or any later litigation. Third, it is very questionable whether the rule set forth in the Reuter footnote is the law in Oregon. *See Dean v. Exotic Veneers, Inc.,* 271 Or 188, 531 P2d 266 (1975); *Bankston v. Hooper,* 46 Or App 431, 611 P2d 1179 (1980).

[4] Because plaintiff is not required to introduce evidence to support its allegation of misrepresentations, we do not consider appellants' argument that plaintiff is precluded from introducing such evidence because the application for coverage allegedly was never made a part of the policy.

policy and when no court has determined or even heard the evidence of misconduct on which the insurer relies. Because I believe that that result is wrong, I dissent.

There are two flaws with the majority's analysis. First, it incorrectly limits the application of *former* ORS 486.551 to insurance policies required after a driver has an uninsured accident rather than extending it to all policies required as proof of the driver's financial responsibility. Second, the majority improperly allows the insurer to use a judgment *by default* against the tortfeasor to prevent the injured party from litigating the validity of the tortfeasor's insurance policy.

*Former* ORS 486.551 was adopted in 1955 as part of the Future Responsibility Law. At the time, that law was the only requirement that motorists or vehicles be insured; it applied only to drivers who had been involved in accidents that resulted in injury or significant property damage. The purpose of *former* ORS 486.551 was to ensure that the required coverage would be available to victims of the insured driver's negligence, no matter what defenses might exist between the insurer and the insured. For that reason, the statute provided that it did not apply "to policies of vehicle liability insurance other than those required in connection with proof of future responsibility."

In 1977, the legislature adopted the Mandatory Financial Responsibility Law, under which *all* vehicles must now carry a minimum amount of liability insurance. In doing so it gave "financial responsibility" under the new law the same meaning as "future responsibility" under the older law. *Former* ORS 486.011(7). The purpose for the new law was also the same as the purpose for the future responsibility law; the legislature simply extended that purpose to a larger group of drivers. Although it did not expressly amend *former* ORS 486.551 to apply to the new law, the use of the identical definition for "financial responsibility" as for "future responsibility," together with the purpose of the two laws, convinces me that the legislature intended *former* ORS 486.551 to apply to *all* statutorily-required liability policies no matter which statute requires them. The legislature made its intent clear in 1983, when, as part of the revision of the traffic laws, it

amended the statute to apply expressly to both kinds of financial responsibility. Or Laws 1983, ch 338, § 957; ORS 743.779 (*formerly* ORS 486.551). That action made explicit what was previously implicit.

The majority's second error is its excessively limited reading of the most relevant Supreme Court case. The majority is correct in stating that defendants' rights are derivative of those of the insureds (the Belekes and Haynie), but what those rights are has never been litigated. Although the judgment by default against the insureds resolves that issue as to them, it does *not* do so as to defendants. In *State Farm Fire & Cas. v. Reuter,* 299 Or 155, 700 P2d 236 (1985), the Supreme Court indicated that a judgment by default against the insured does not control the rights of the injured party. In that case, the court held that the injured party could not relitigate the issue of the insured's intent, because the insured had litigated that issue in his trial for rape and had lost. In reaching its conclusion, it noted that "[f]or the result of the previous case to be binding against the successor in interest, *the issue must have been actually litigated.*" 299 Or at 167 n 10. (Emphasis supplied.)

The court cited *Restatement (Second) Judgments,* § 27, and *Clemmer v. Hartford Ins. Co.,* 22 Cal 3d 865, 877, 151 Cal Rptr 285, 587 P2d 1098 (1979), in support of the requirement that the issue actually be litigated. *Comment e* to section 27 states, in part, "[i]n the case of a judgment entered by confession, consent, or default, *none of the issues is actually litigated.* Therefore, the rule of this Section [providing issue preclusion (collateral estoppel) for issues actually litigated and determined by a final judgment] does not apply with respect to any issue in a subsequent action."[1] (Emphasis supplied.) In *Clemmer,* the California Supreme Court held that the injured parties could relitigate the issue of the wrongdoer's mental state, because the wrongdoer withdrew his defense of insanity after being convicted of murder in the second degree and thus did not fully litigate the issue.

I conclude from the Supreme Court's statement in

---

[1] Although the comment to the Restatement refers to issue preclusion in a subsequent action, the Supreme Court's reference to it in *State Farm Fire & Cas. v. Reuter, supra,* indicates that the court would apply the same rule to a non-defaulted party in the same action.

*State Farm Fire & Cas. v. Reuter, supra,* and from the authority on which it relied, that a default judgment against the insureds cannot prevent the injured party from litigating the issue of coverage. This result ensures that the injured party will not be deprived of the benefit of the tortfeasor's policy as a result of the tortfeasor's inaction and before a court has heard the evidence and ruled on it. By so doing, it both protects the injured party from irresponsible tortfeasors and removes significant temptations to collusion and sweetheart deals between them and insurers. Because both the reasoning and the result of the majority opinion are wrong, I dissent.

Richardson, J., joins in this dissent.