415 P.2d 680

Curtis E. FARLEY, Plaintiff-Respondent,
v.
FARMERS INSURANCE EXCHANGE, Defendant-Appellant.

No. 9682.

Supreme Court of Idaho.

June 15, 1966.

Rehearing Denied July 11, 1966.

Elam, Burke, Jeppesen & Evans, Boise, for appellant.

Coughlan & Imhoff and Kent B. Power, Boise, for respondent.

TAYLOR, Justice.

This cause was submitted to the district court upon a stipulation of facts entered into by counsel for the parties, and upon the record of a prior action prosecuted by plaintiff (respondent) against one Ralph E. Schultz. Schultz was insured against public liability and property damage by the terms of an automobile insurance policy issued by defendant (appellant). Among the terms and conditions of the policy was the so-called standard "co-operation clause" as follows:

"The insured shall co-operate with the Exchange and, upon the Exchange's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance."

September 3, 1962, a collision occurred between the insured automobile driven by Schultz and one driven by plaintiff. As a result plaintiff suffered bodily injuries, and damage to his automobile. Immediately after the accident Schultz reported to defendant the facts of the accident and names of witnesses.

April 15, 1963, plaintiff brought action for damages against Schultz. In that action Schultz and defendant herein were represented by counsel employed by defendant.

At the time of the accident Schultz was accompanied by four passengers, all of whom resided at Mountain Home in Elmore county. Between the time of the accident and December 9, 1963, the day upon which the damage action was set for trial, two of Schultz's passengers had moved out of the state and Schultz was employed at the Getchel Mines in Golconda, Nevada. October 17, 1963, defendant's counsel by letter advised Schultz that it would be necessary for him to attend the trial of the action brought against him and that the cause would be set for trial probably late in 1963. December 3, 1963, defendant's attorney talked with Schultz by telephone and discussed with him the pending trial, set for the 9th day of December, 1963, at which time Schultz assured the attorney that he would come to Mountain Home to testify at the trial and that he would arrive either late Friday night, December 6th, or early Saturday morning, December 7th, to go over the case with the attorney and prepare for trial. December 5, 1963, Schultz called defendant's attorney and advised that his, Schultz's, employer would not let him off work on Friday, December 6th, but that he would come to Mountain Home either late Saturday, December 7th, or early Sunday, December 8th. At that time Schultz inquired concerning his expenses of travel

and was assured by defendant's attorney that his expenses would be paid by defendant.

The stipulation further recites:

"Defendant's attorney probably could have, but did not take the deposition of any witnesses, or prospective witnesses to this cause, for the reason that approximately two weeks before the time set for the trial, defendant's attorney, Hall, discussed with Joseph M. Imhoff, Jr., one of the plaintiff's attorneys, the taking of the deposition of Edward L. Morrow at St. Paul, Minnesota. At about this time, an offer of settlement was made to the Attorney Imhoff, who only agreed to recommend the same to plaintiff. It was, therefore, assumed by defendant's attorney that the action had been settled. On the Wednesday or Thursday immediately preceding the Monday, December 9th, at which time the trial was to be held, Attorney Imhoff advised defendant's counsel that his client would not accept the offer of settlement and wanted 'his day in court'. It was then too late to take the deposition of Edward Morrow outside of the State of Idaho. Defendant's attorney assumed that he could prove the same facts through Ralph E. Schultz, as could be proved by witness Edward Morrow, and therefore decided to go ahead with the trial, rather than to ask for a continuance in order to take the deposition of Edward Morrow.

"Over the weekend of Sunday, December 8, 1963, a snow storm had occurred in the Rocky Mountain area, depositing several inches of snow, and closing many arterial roads to travel, which storm was still in progress on the 9th day of December, 1963, the day set for the trial to commence.

"At the time and place of such trial, and at the hour of approximately 10:00 o'clock A.M., the said Ralph E. Schultz did not appear for trial, and had not arrived in Mountain Home the preceding Saturday or Sunday, as he had assured

defendant's counsel that he would; at the opening of the trial, defendant's counsel advised the Court of the fact that Schultz had not yet arrived and that he undoubtedly had been delayed enroute because of the snow storm. The Court suggested proceeding with the selection of a jury while waiting for Schultz to arrive, assuming that Schultz had been delayed by the storm. The selection of the jury was completed and Court adjourned to 1:30 o'clock P.M., to await the arrival of Schultz. At 1:15 o'clock P.M., when Schultz still failed to arrive, the defendant filed an affidavit and motion for continuance.

"At approximately 1:30 o'clock P.M., on that day, the Court heard the motion for continuance, the Court denied the same, and directed the plaintiff to proceed with his evidence, and stated that if Schultz failed to arrive by the time the plaintiff rested his case, the motion for continuance could be renewed."

Plaintiff then proceeded with the introduction of evidence and rested his case in the forenoon of December 10, 1963. At that time defendant again moved for a continuance, since Schultz had not yet arrived. The court denied the motion and ordered that the trial proceed. During the recess which followed and before defendant presented any evidence, defendant's attorney advised one of plaintiff's counsel that if it later developed that Schultz was voluntarily absenting himself and did not appear at the trial, defendant would assert its rights under the co-operation clause in the insurance policy. At that time plaintiff's counsel offered to agree to a continuance if defendant would waive its defense under the co-operation clause, at any subsequent trial. Defendant refused to waive such defense and plaintiff's counsel refused to agree to a continuance. Cf. State Farm Mut. Auto. Ins. Co. v. Palmer, 237 F.2d 887, 60 A.L.R.2d 1138 (9 Cir., 1956).

Defendant's attorney did not withdraw as counsel for Schultz but proceeded with the trial and presented evidence in defense and

**40**

upon Schultz's cross-complaint. The jury returned its verdict in favor of the plaintiff, upon which judgment was entered against Schultz for $6,859.00.

Subsequent to his talks with counsel by telephone, Schultz never again contacted the defendant insurance company, its agents or attorneys, nor advised it of his whereabouts. Sometime during the month of August, 1964, defendant located Schultz residing at Lockport, N. Y., and thereafter obtained from him information upon which a supplemental stipulation of facts was entered into by counsel.

This stipulation recites that if Schultz were called as a witness he would testify that he voluntarily left his Nevada employment on December 7, 1963, and went directly to New York; he had no difficulty in motoring from Nevada to New York; that he was neither ill nor under any restraint when he left for New York.

This action was commenced by Farley, February 18, 1964, to recover from defendant insurance company, the amount of his judgment against Schultz, and attorney's fees. By its answer defendant denied liability because of Schultz's breach of the co-operation clause in the insurance contract.

The court found that:

"Defendant Schultz did fail to attend the trial, after notice and assurance to counsel that he would be there, and that he fully cooperated with defendant's insurance company, as requested by it, prior to time of trial and furnished the names of witnesses, a statement of his version of the accident and kept defendant informed of his whereabouts."

"That the defendant, Farmers Insurance Exchange has not been prejudiced by the fact that their insured, Ralph E. Schultz, failed to appear for the hearing as scheduled and that the plaintiff presented a strong case of liability and in all probability the result would have been the same in the tort action had the de-fendant Schultz been personally present."

The court then concluded:

"That the jury verdict in the tort action would have been substantially the same had the defendant Schultz been personally present at the trial; that the defendant Schultz's failure to appear at the trial did not result in any prejudice to the defendant, Farmers Insurance Exchange, and that the defendant, Farmers Insurance Exchange, did not meet its burden of proof in showing prejudice by virtue of the defendant Schultz's failure to appear * * *."

■ The issue presented is whether the defendant was prejudiced as a result of the breach of the co-operation clause by Schultz in failing to appear at the trial.

"Violations of conditions by the assured will not release the insurer unless it is prejudiced by the violation. * * * Both the fact of the violation of the conditions of the policy, and that prejudice resulted therefrom, are matters of affirmative defense, which must be pleaded and proved by the insurer." Leach v. Farmer's Automobile Interinsurance Exchange, 70 Idaho 156, at 160, 161, 213 P.2d 920, 923 (1950).

A reading of the transcript in the tort action against Schultz bears out the conclusion of the trial court that defendant failed to prove in this action that it was prejudiced by Schultz's failure to appear at the trial in the former action. The conclusion is strengthened by the fact that the district judge before whom this action was tried also presided at the trial of the tort action against Schultz, and observed the demeanor of the witnesses and the reaction of the jury thereto.

■ Defendant contends that where the insured is the driver of a car involved in an accident, and then breaches the co-operation clause by failing to appear at the trial, the insurer is either, prejudiced as a matter of law, or has the benefit of a presumption of prejudice. We find no prejudice arises

from such state of facts, as a matter of law. Leach v. Farmer's Automobile Interinsurance Exchange, supra.

■ We recognize that in some jurisdictions the courts accord to the insurer a presumption of prejudice in such cases. Cf. Cameron v. Berger and Penn. Indem. Corp., 336 Pa. 229, 7 A.2d 293 (1938); Shalita v. American Motorists Ins. Co., 266 App.Div. 131, 41 N.Y.S.2d 507 (1943), reh. and app. den. 266 App.Div. 885, 44 N.Y.S.2d 101; Bauman v. Western & Southern Indem. Co., 230 Mo.App. 835, 77 S.W.2d 496 (1934).

In 8 Appleman's Insurance Law and Practice, § 4773, it is said:

"The insured's lack of cooperation must be substantial and material, to result in a breach of the policy condition. Some courts have adopted the rule that the insured's violation of a co-operation clause constitutes a defense to the insurer only where it can show it was substantially prejudiced by such violation. Such a rule is probably salutary where it is evident that the insured's infraction did not seriously impair the insurer's investigation or defense to the action. But if the rule is carried to the point of imposing an almost insurmountable burden of proving that the verdict was the result of the lack of co-operation, it would amount to a perversion of such contractual provision."

We prefer the modern view which requires the insurance company to prove prejudice without the benefit of a presumption. In holding that rejection of the presumption of prejudice does not place an "insurmountable burden" on the insurer, the Michigan Supreme Court said:

"The Michigan rule is simply that where an insurer pleads noncooperation prejudice will not be presumed from a mere showing of noncooperation, but the insurer must also introduce proofs tending to show actual prejudice, and further—and this is the nub of this case—that where the evidence on this score is conflicting, this Court will not disturb the finding of the trier of the facts if it is supported by competent evidence." Allen

v. Cheatum, 351 Mich. 585, 88 N.W.2d 306, 312 (1958).

In Campbell v. Allstate Insurance Co., 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963), the California Supreme Court abandoned the former "California rule" creating a presumption of prejudice. The court noted there was no statutory basis for such a presumption, and that presumptions should not be created judicially in the absence of compelling reasons for so doing, and further said:

"Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative. The presumption would not be in keeping with the public policy of this state to provide compensation for those negligently injured in automobile accidents through no fault of their own [citations], and we are of the view that a judicially created presumption of prejudice, whether conclusive or rebuttable, is unwarranted * * *." 32 Cal.Rptr. at 829, 384 P.2d at 157.

It is likewise the public policy of this state to secure compensation to the injured victims of negligent drivers.

No punitive damages were awarded against Schultz. The damage to Farley's car was stipulated by the parties. Presumably the damage awarded for Farley's personal injury was based upon the extent of such injury.

We conclude that the burden of proving prejudice was upon defendant without the aid of a presumption thereof. Leach v. Farmer's Automobile Interinsurance Exchange, 70 Idaho 156, 213 P.2d 920 (1950); Johnson v. Doughty and Farmers Ins. Exchange, 236 Or. 78, 385 P.2d 760 (1963); Campbell v. Allstate Ins. Co., 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963); Jameson v. Farmers Mut. Automobile Ins. Co., 181 Kan. 120, 309 P.2d 394, 400 (1957); Allen v. Cheatum, 351 Mich. 585, 88 N.W. 2d 306, 311 (1958); Griffin v. Fidelity & Casualty Company of New York, 273 F.2d

45, 48 (5th Cir. 1959); Western Casualty & Surety Co. v. Weimar, 96 F.2d 635, 636 (9th Cir. 1938); See also, 29A Am.Jur., Insurance, § 1472, p. 584; Anno. 60 A.L.R. 2d 1146, 1154.

Upon consideration of plaintiff's motion duly served and filed herein, it is adjudged that $750.00 is a reasonable fee to be allowed to plaintiff's counsel for services rendered on this appeal. Accordingly it is ordered that $750.00 be added to the judgment against defendant. I.C. § 41–1839; Molstead v. Reliance National Life Insurance Co., 83 Idaho 458, 364 P.2d 883 (1961).

Judgment affirmed.

Costs to respondent.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.