JOHN JOHNSON, Plaintiff-Appellee, *v.* QUEDESSIA WADE, Defendant.— (KENILWORTH INSURANCE COMPANY, Garnishee-Appellant.)

First District (5th Division)   No. 62594

Opinion filed March 25, 1977.

---

[1] The State does not assert there was consent to the search.

612

Lucaccioni & Glickstein, of Chicago, for appellant.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This is an appeal from a judgment entered in favor of plaintiff in a garnishment proceeding brought against garnishee, Kenilworth Insurance Company, to satisfy plaintiff's damage award previously recovered against garnishee's assured, Quedessia Wade. On appeal, garnishee contends that assured breached the cooperation clause in her insurance policy.

At a bench trial the following pertinent facts were adduced.

*Gary B. Friedman for the garnishee*

He is an attorney employed by the law firm of Orner & Wasserman. Garnishee retained them to represent assured in the underlying action. Because assured's case was listed on the trial assignment call for September 18, 1974, he sent her a letter on August 16, 1974, notifying her of this fact. The letter requested that she contact him immediately and inform him if she would be available on that date. He received no response and therefore phoned her on September 17, 1974, but was unable to reach her. The following day the case was assigned to a trial judge, but he did not appear at the assignment call.

After the trial court denied his motion for a continuance on Thursday, September 18, 1974, he hired two investigators, Marshall Musick and Harold Prince, to locate Quedessia Wade. On Monday morning Prince informed him that she refused to appear and he attempted to withdraw as her counsel. The court denied this motion also. No further attempts were made to contact assured after September 23, 1974.

On cross-examination, he acknowledged that Quedessia Wade had fully cooperated with his office prior to this incident.

On re-cross-examination, he admitted that between August 16, 1974, and September 17, 1974, he made no attempt to contact her. He also admitted his office did not have a docket system to remind him to contact witnesses and clients as the time of trial approached. Each attorney handled this on his own.

*Harold Prince for the garnishee*

Friedman retained him on September 20, 1974, to locate assured. Three times that evening he stopped at 456 West 61st Place, however, no one answered the door. When he returned the following morning, he saw a black man, approximately 5'11" tall and of slender build sitting on the porch. He informed the man that he was an investigator for Kenilworth Insurance Company and that "he wanted Mrs. Wade to come to court in regard to her case * * *." The man told him, "You're at the wrong house * * * the Wade's do not live here" but suggested he try at a house further down the block. There, a woman directed him back to 456 West 61st Place. After rechecking his "sources" and verifying that Wades lived at 456 West 61st Place, he returned there and found assured with the man he had talked with earlier. The man again told him he was at the wrong house. He then asked the people next door where the Wades lived. They told him "You just left them. You just got through talking to Mrs. Wade." After confirming through other neighbors that Wades lived at 456 West 61st Place, he returned there with a subpoena, but no one answered the door. In all, he visited the house seven times, however, only once, on the occasion just described, did he contact anyone. On Monday he attempted to subpoena Mr. Wade at the Victor Chemical Company, however, he was not at work that day.

On cross-examination, he admitted that he never talked to assured. Nor did the man he talked with ever identify himself as Mr. Wade.

*Marshall Musick for garnishee*

Friedman hired him on September 19, 1974, to locate assured. Pursuant to this assignment he attempted to phone her at Triangle 3-8049 "almost every hour and a half on September 21 and 22, 1974." Several times someone answered, but they did not identify themselves. He told the party he worked for Orner and Wasserman and that he was trying to contact Mr. and Mrs. Wade to tell them to be in court on Monday morning. He further warned him that defendant had to be in court "cause when Mr. Friedman gives you an order, he expected it to get carried out." He also went to 456 W. 61st Place on either Friday or Saturday. There he saw a black man, who was 5'10" or 5'11" tall, looking out the window, but the man never answered the door. He then left a note asking assured to call Orner & Wasserman.

On cross-examination, he acknowledged he never spoke with anyone who identified themselves as Mr. or Mrs. Wade.

*Quedessia Wade, under section 60, for garnishee*

She was the defendant, assured, and counterplaintiff in the original action which was based on an automobile collision between herself and plaintiff.

For the past 15 years she has resided with her husband at 456 West 61st Place, Chicago. Her telephone number is Triangle 3-8049. Besides herself and her husband, who is black and about six feet tall, two nephews ages 20 and 24, also lived with her. An older woman, Mrs. McKinney, lives upstairs.

Although she admitted receiving approximately five letters from Orner & Wasserman requesting that she appear in court, she does not recall receiving a letter dated August 16, 1974, advising her of the September 18, 1974, trial date. Nor did anyone from that firm contact her on September 18, 1974. She denied ever meeting Prince.

She does not remember whether she was in Chicago from September 17 to September 23, 1974. In either August or September she and her husband went to "Memphis, Ohio, Michigan, South Bend and a lot of places," but she does not recall the exact dates of these trips.

On direct examination she stated that she had come to court several times after receiving a letter directing her to do so. On each occasion she remained all day, however, court was never held.

The parties stipulated that at the time of the accident assured was covered by policy of insurance containing a clause requiring her to cooperate with her insurer. They further stipulated that she settled her counterclaim on July 13, 1974, for $300.

OPINION

Garnishee contends that assured breached the cooperation clause in her insurance policy. It argues that assured's past cooperation justified its reliance on its letter of August 16, 1974, to secure her presence at trial. It suggests that her failure to respond was both "unprecedented and unanticipated" and was due to the fact that she no longer had a financial interest in the outcome of the case, having previously settled her counterclaim against defendant. It further argues that it exercised every reasonable effort to secure her attendance at trial, but she refused to appear. Accordingly, garnishee concludes that the trial court erred when it refused to invoke the cooperation clause against defendant, thereby relieving it of its contractual obligation to pay the judgment.

■■■ In order to assert the affirmative defense of non-cooperation, the burden is on the insurer to establish by a preponderance of the evidence that it acted in good faith to secure the attendance of its assured at trial and that assured's failure to appear was due to her refusal to cooperate. (*Anderson v. Lawlor* (1975), 27 Ill. App. 3d 150, 326 N.E.2d 529.) Good faith is evaluated not only in terms of what assured failed to do, but also by what insurer did to secure her cooperation. (*Penn v. Progressive General Insurance Co.* (1966), 74 Ill. App. 2d 32, 219 N.E.2d 857.) Whether insurer exercised a reasonable degree of diligence and

whether assured's failure to appear was actually a refusal to cooperate are determined by an examination of the facts of each case. *Mazzuca v. Eatmon*, 45 Ill. App. 3d 929, 360 N.E.2d 454.

■■ ■ Here, although garnishee diligently pursued assured as of September 17, 1974, it did not do so prior to this time. Its form letter of August 16, 1974, informing assured of her trial date one month later was an insufficient effort on its part to secure her presence there. Counsel's letter explicitly directs assured "to telephone the undersigned immediately upon receipt of this letter to confirm your Court appearance." Her failure to do so within a reasonable time served as constructive notice that a problem existed. Despite assured's previous cooperation any number of valid reasons exist for her failure to respond. Here, defendant testified that she travelled extensively in August or September and was possibly out of town either when the notice arrived or when garnishee was attempting to reach her at the time of trial. Consequently, further action should have been taken by the insurer to ascertain her availability prior to the eve of trial. If she then proved reluctant to cooperate or was unavailable counsel would still have had adequate time to either secure her attendance by subpoena, to send her a reservation of rights notice or a letter of disclaimer and to bring a timely motion for a continuance before the *assignment* judge. Here, counsel brought his motion for a continuance before the *trial* judge. While the assignment judge is allowed great discretion in granting continuances, the trial judge must act under the assumption that the assignment judge disposed of all preliminary matters. Consequently, the trial judge may grant a continuance only for an extraordinary circumstance arising between the time the case was sent down for trial and the time the trial judge proceeded to hear it. *Gray v. Gray* (1955), 6 Ill. App. 2d 571, 128 N.E.2d 602.

■■ ■ More importantly, garnishee waived the defense of non-cooperation by not informing its assured of the consequences of her failure to cooperate. Because an *unequivocal* disclaimer is required (*Popovich v. Gonzales* (1972), 4 Ill. App. 3d 227, 280 N.E.2d 757), the investigators' admonitions to appear in court without explaining the consequences of her failure to do so, were obviously inadequate. Nonetheless, garnishee suggests it was unnecessary to send assured a disclaimer because of her past cooperation. Although we agree that a disclaimer was not appropriate so long as she cooperated, had garnishee been diligent in ascertaining her availability, it would have discovered earlier whether a disclaimer should have been given. Moreover, even after counsel discovered that assured would not attend trial, no attempt was made to inform her of the consequences of her action.

■■ Finally, the facts do not necessarily establish that assured refused

to cooperate. In a bench trial the judge is the trier of fact and his determination will not be disturbed on review unless it is against the manifest weight of the evidence. (*Hall v. Burnett* (1972), 5 Ill. App. 3d 33, 282 N.E.2d 509.) Here, although garnishee contends that assured refused to appear for trial, both investigators admitted they didn't speak with her. Prince said he talked with Mr. Wade and that assured was with him at the time. However, defendant's husband was neither brought to court nor properly identifed as the person Prince had talked to and assured denied ever seeing Prince. She further denied ever talking with anyone from Orner and Wasserman, the law firm representing her insurer at the request of garnishee or knowing that she was to appear in court on September 18, 1974. These conflicts were best settled by the trier of fact which found in favor of assured.

The judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.