STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant, *v.* IMOGENE McSPADDEN, Adm'r of the Estate of Jack L. McSpadden, Deceased, *et al.*, Defendants-Appellees.

Fifth District   No. 79-501

Opinion filed September 26, 1980.

Mitchell, Brandon & Schmidt, of Carbondale, for appellant.

James B. Bleyer, of Marion, for appellee Michael Green.

Craig, Brandon & Murphy, of Herrin, for appellee Imogene McSpadden.

Mr. JUSTICE KARNS delivered the opinion of the court:

The plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter State Farm), appeals from the judgment of the Circuit Court of Jackson County refusing to relieve it of its duty to defend and from coverage under its automobile liability policy insuring defendant, Michael Green. Judgment was entered in favor of the defendants, Imogene McSpadden, administrator of the estate of Jack L. McSpadden, deceased, and Green.

Imogene McSpadden, as administrator for her son's estate, sued Michael Green for the wrongful death of Jack McSpadden arising out of an automobile accident. State Farm asserted that Green had breached the cooperation clause of the policy and sought to terminate its duties under the policy by filing this action for declaratory judgment. The complaint alleged that Green had breached his duty to cooperate by giving false information to State Farm. The administrator of the estate of Jack McSpadden was joined as a necessary party, having an interest in the viability of Green's insurance policy. *Williams v. Madison County Mutual Automobile Insurance Co.* (1968), 40 Ill. 2d 404, 407, 240 N.E.2d 602, 604.

This case involves an insured's knowing misstatement of the identity of the driver of his car on the morning of October 17, 1976, when a fatal accident occurred. The defendant, Green, owned a 1974 Caprice which was insured at the time of the accident by State Farm. Green and Jack McSpadden had gone out on the evening of October 16, 1976, to a bar. On the return trip, Green had been stopped by a Jackson County deputy at 3:18 a.m., about 30 minutes prior to the accident, for an undetermined reason. At that time, Green was the driver of the car. When the car proceeded along Illinois State Route 149 it hit a guardrail, went down an embankment, and struck a tree. The passenger's side of the car was severely damaged. Jack McSpadden was killed. Green escaped with only a few minor injuries.

After the accident occurred Green stated on numerous occasions that he was not the driver of the car at the time of the accident. On October 17, 1976, Green told State Trooper Ivan S. Castens that McSpadden had changed places with him shortly after being stopped and that McSpadden was driving when the accident occurred. Green indicated that he was asleep on the passenger side when he was thrown clear of the car. Similar statements were made to State Farm agents on three other occasions in

the following week. On November 16, 1976, Green testified at an inquest under oath to the same effect.

It was not until March 17, 1978, one day after being served with a complaint in the wrongful death action, that Green first told State Farm that he was driving the car when McSpadden was killed. It is this series of inconsistent statements which State Farm asserts is a breach of the cooperation clause in Green's insurance policy. The policy included the following language:

> "3. Assistance and Cooperation of the Insured. The insured shall cooperate with the Company and upon its request, attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceeding in connection with the subject matter of this insurance * * *."

■■ All parties to this controversy agree that the controlling principles of law are set out in *M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill. 2d 492, 363 N.E.2d 809. The applicable test, enunciated in *Cheek*, to determine whether an insured's actions warrant termination of the insurer's responsibility is that, "* * * unless the alleged breach of the cooperation clause substantially prejudices the insurer in defending the primary action, it is not a defense under the contract." 66 Ill. 2d 492, 499-500, 363 N.E.2d 809, 813.

State Farm contends that it was prejudiced as a matter of fact and a matter of law and that the decision of the trial court was against the manifest weight of the evidence. The allegations are threefold. First, State Farm claims that its reliance on Green's statements precluded a detailed investigation. Second, Green's inconsistent statements have destroyed his credibility thus prejudicing any possibility of settlement and successful defense at trial. Finally, it is claimed that Green's inconsistent statements put State Farm in the position of having to forego a viable defense, that is, that Green was not the driver, if it is compelled to defend Green.

As to the inadequate investigation, prior to Green's admission, State Farm had conducted a limited investigation of the accident for purposes of paying Green's claim for property damage to his vehicle. The investigation included viewing the accident scene, taking pictures of the automobile after the accident and obtaining a copy of the police report made by the investigating officer. No effort was made to locate pre-occurrence or post-occurrence witnesses. It is agreed that there were probably no eyewitnesses to the actual accident.

The limited scope of the investigation is justified by State Farm as a good-faith reliance on Green's account of the accident. While an insurer should be able to rely on the statements of its insured in many circumstances, doing so will not always absolve the insurer of its duty to investigate an accident. As was recognized in *Cheek*, the ordinary

automobile insurance policy is affected with considerations of public interest. An insurer cannot escape its responsibility to the public by claiming reliance on an insured's statements when the insured has a strong motive to falsify material facts concerning liability and circumstantial evidence points to actual falsification.

Green had a motive to falsify who was driving on the night of the accident. Under section 9—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—3), it is possible that Green, if found to be the driver, could be charged with reckless homicide, a Class 4 felony. This certainly provided a motive for Green to falsify.

There was not only a motive to falsify, but there was also strong circumstantial evidence that Green was not telling the truth. The report that Green had been stopped while driving shortly before the accident, the heavy damage to the passenger side of the car, and Green's slight injuries all point to the fact that Green was driving and not riding as a passenger.

■■ In light of these facts we cannot say that State Farm's investigation was prejudiced by Green's statements. State Farm had already conducted a partial investigation, and State Farm only speculates that further evidence could have been found by a more extensive investigation. Inasmuch as prejudice cannot be presumed, such speculation falls short of proving substantial prejudice (*Cheek*, 66 Ill. 2d 492, 500, 363 N.E.2d 809, 813.) In any event, the responsibility for the inadequate investigation cannot be shifted solely to Green when his motive to falsify and circumstantial evidence all point to the suspect nature of his statements.

This case is to be distinguished from *United States Fire Insurance Co. v. Watts* (5th Cir. 1966), 370 F.2d 405, relied on by State Farm. In that case the insured's misstatements were actually shown to prevent the discovery of a material witness. Also, the insured's misstatements were revealed only the day before the trial thus adding an element of surprise to the actual prejudice, both of which are absent here. Thus, *Watts* is inapplicable on its facts to the case at bar.

■■ Another allegation of prejudice by State Farm is that Green's inconsistent statements prejudiced the chances for settlement of the case and its ability to defend at trial. However, the record is devoid of any support that a settlement would have been reached had Green not given inconsistent statements. The evidence in the record indicates that the damages were fixed, with no continuing medical expenses, because of McSpadden's death. Thus, the settlement value was the same at the time that State Farm learned of the inconsistency as it was when Green gave his earlier statements.

■■ The danger of Green's impeachment at trial does not constitute substantial prejudice to State Farm. At the outset it must be noted that State Farm's reliance on *Watts* is, again, misplaced. In *Watts* the

procedural posture of the case was that the underlying trial had taken place whereas in the case under consideration it has not. Thus, the court in *Watts* had a record from which to judge whether the insurer had been prejudiced by the insured's statements. This point is decisive because, as previously mentioned, prejudice cannot be assumed. State Farm's speculation as to how and to what degree Green might be impeached is too tentative to rise to the level of substantial prejudice, considering it is highly unlikely that the plaintiff would bring out Green's prior inconsistent statement that he was not the driver at the time of the accident.

██ The final point raised by State Farm is that it is prejudiced as a matter of law by Green's inconsistent statements because State Farm will be put in the position of having to defend Green in the wrongful death action, assuming Green to be the driver. If there appears to State Farm a good-faith question that Green was not the driver, we think the answer to State Farm's dilemma can be found in the procedure required by the supreme court in *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

In *Peppers*, the question was presented of how an insurer could defend an insured when the insurer had a viable defense which would expose the insured to liability but preclude any recovery under the policy, a contention similar to State Farm's in the present case. The answer was that absent the insured's acceptance of the insurer's defense after being informed of the conflict, or, absent a waiver of the policy defense by the insurer, the insured, "* * * has the right to be defended in the personal injury case by an attorney of his own choice who shall have the right to control the conduct of the case. By reason of St. Paul's contractual obligation to furnish Peppers a defense it must reimburse him for the reasonable cost of defending the action. Also, St. Paul is entitled to have an attorney of its choosing participate in all phases of this litigation subject to the control of the case by Peppers' attorney, and St. Paul is not barred from subsequently raising the defense of noncoverage in a suit on the policy." (64 Ill. 2d 187, 198-99, 355 N.E.2d 25, 31.) See also, *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

██ Inasmuch as State Farm has not established any substantial prejudice in the defense of Green caused by his inconsistencies, there is no reason to void its obligation to defend and insure. The judgment of the trial court was not against the manifest weight of the evidence.

For the above reasons, the decision of the Circuit Court of Jackson County is affirmed.

Affirmed.

JONES, P. J., and SPOMER, J., concur.