423 S.E.2d 906 (1992)
188 W.Va. 297
William Robert BOWYER, By His Next Friend, Ida Bowyer; and Ida Bowyer, Plaintiffs Below, Appellants,
v.
David THOMAS; McDonough Caperton Shepherd Group, Inc.; and the Aetna Casualty & Surety Company, Defendants Below,
Aetna Casualty & Surety Company, Appellee.
No. 20730.
Supreme Court of Appeals of West Virginia.
Submitted September 16, 1992.
Decided November 13, 1992.
*907 Ralph C. Young, Hamilton, Burgess, Young, Tissue & Pollard, Oak Hill, for appellants.
R. Ford Francis, Jay W. Craig, Shuman, Annand & Poe, Charleston, for appellee.
MILLER, Justice:
In this appeal of a declaratory judgment action, we consider the scope of an insured's duty to cooperate with his insurer under an automobile liability policy. In the instant case, we find that the insurer failed to prove that its insured did not cooperate as required by the terms of his insurance policy.

*908 I.
On August 13, 1981, the insured, David Thomas, and William Bowyer, age 15, were involved in a single car accident near Oak Hill in Fayette County, West Virginia. The insured was only slightly injured, but William Bowyer's injuries were extensive. Mr. Thomas was insured under an automobile liability policy issued by Aetna Casualty & Surety Co. (Aetna).
In April of 1982, Ida Bowyer, the mother and next friend of William Bowyer, filed suit against Mr. Thomas in the Circuit Court of Fayette County. Aetna retained a local attorney to represent its insured, Mr. Thomas. Before answering the complaint, the attorney attempted to contact Mr. Thomas by telephone, but was unable to reach him. Nonetheless, an answer was filed on Mr. Thomas's behalf in order to avoid a default judgment.
Thereafter, Mr. Thomas made several appointments to meet with the attorney, but did not do so until the end of June, 1982. After relating the circumstances surrounding the automobile accident, Mr. Thomas explained that it would be difficult to reach him because his job required him to be on the road constantly. He did give the attorney his mother's address in Oak Hill and indicated that his mother would know how to get in touch with him. In the months that followed, Mr. Thomas would occasionally call the attorney, but did not provide him with a permanent address.
Although there is no notice of deposition in the record or correspondence verifying the insurer's allegations, Aetna claims it had arranged to depose Mr. Thomas on August 17, 1982. When Mr. Thomas failed to appear at the scheduled deposition, Aetna's claim representative, Ralph Schrader, sent a letter, dated August 23, 1982, to Mr. Thomas at his mother's residence in Oak Hill. The letter stated that Mr. Thomas "failed to appear in Fayetteville West Virginia on August 17, 1982 for the taking of [his] discovery deposition[.]" After citing language from the insurance policy which requires every person seeking coverage to cooperate with the insurer,[1] Mr. Schrader's letter warned that if Mr. Thomas failed to cooperate in the future, Aetna would "conduct any investigation or activity in connection with the case under a full reservation of the Company's rights." The letter did not inform Mr. Thomas that his failure to cooperate might relieve Aetna of its duty to defend the lawsuit.[2]
Subsequently, Mr. Thomas contacted Mr. Schrader and advised him that he had moved to California, but still did not have a permanent address. During the next several months, Mr. Thomas called Mr. Schrader on several occasions and seemed willing to assist Aetna in preparing his defense. Moreover, although Mr. Thomas *909 agreed to be deposed in California, a deposition was never scheduled.
On December 21, 1982, Mr. Schrader wrote Mr. Thomas again. As in his first correspondence, Mr. Schrader noted that Mr. Thomas "failed to appear in Fayetteville, WV on August 19, 1982 [sic] for the taking of [his] discovery deposition[.]" He reiterated that Mr. Thomas had a duty to cooperate with Aetna and once again advised him that further uncooperation would result in the company continuing to investigate the loss "under a full reservation of the Company's rights." This letter did not warn Mr. Thomas that his failure to cooperate would result in a loss of coverage under the policy.[3]
On January 24, 1983, Ida Bowyer's attorney, Ralph Young, took the deposition of David Thomas's mother, Lucy Thomas. She testified that her son left West Virginia in August, 1982, to look for work in California. Since August, she had heard from him on several occasions, and he had given her an address where he could be reached. Mrs. Thomas provided the address to all the attorneys present at the deposition.
Aetna's attempts to contact Mr. Thomas in California are found in an affidavit submitted to the circuit court by Mr. Schrader. In the affidavit, Mr. Schrader generally asserted that he made several attempts to contact Mr. Thomas to no avail.[4] The only date Mr. Schrader identified specifically was May 23, 1983, when Mr. Thomas called him inquiring about the status of the lawsuit. During this telephone conversation, Mr. Schrader informed Mr. Thomas that Aetna was denying coverage because Mr. Thomas had failed to cooperate.[5] That same day, Mr. Schrader wrote to the plaintiff's attorney and informed him that Aetna *910 was "declining coverage to David Thomas for his failure to cooperate."
Thereafter, Ida Bowyer filed a separate declaratory judgment action in the Circuit Court of Kanawha County against Aetna seeking a declaration of coverage up to the policy limits.[6] W.Va.Code, 55-13-1. The declaratory judgment action was transferred to the Circuit Court of Fayette County and ordered consolidated with the underlying personal injury action.
Subsequently, Aetna filed a motion for summary judgment, arguing that because Mr. Thomas failed to cooperate, as required under the terms of the insurance policy, Aetna was absolved of its duty to defend or pay in this action. An evidentiary hearing was held on December 17, 1986. Aetna presented the testimony of the attorney it assigned to represent Mr. Thomas and of Mr. Schrader and submitted into evidence the August 23, and December 21, 1982 letters.
In an order dated June 25, 1991, the Circuit Court of Fayette County found that Aetna had made a good faith effort to secure the cooperation of its insured and that the insured had failed to cooperate as required by the insurance policy. Accordingly, the court ruled that Aetna was relieved of any liability under the policy in excess of the $20,000 mandated by the Motor Vehicle Safety Responsibility Law, W.Va.Code, 17D-1-1, et seq. The plaintiff appeals.[7]

II.
We have not had occasion to give any extended consideration to the scope of the insured's duty to cooperate under an automobile liability policy. In Marcum v. State Automobile Mutual Insurance Co., 134 W.Va. 144, 59 S.E.2d 433 (1950), we dealt with this issue briefly. In Marcum, the insured, a Kentucky resident, was involved in an automobile accident in West Virginia. Several pedestrians were injured, and at least one person was killed. One of the injured individuals sued the insured. The lawyer retained by the insurance company to defend the insured advised him to stay out of West Virginia in order to avoid service of process. Nonetheless, the insured did return to West Virginia and was served. Following a jury trial, a judgment was rendered against the insured. Although the insurance company defended the insured in the personal injury action, it did so under a reservation of rights letter and later refused to pay the judgment.
Subsequently, the plaintiff filed suit against the insurance company. In response, the insurance company claimed that the insured violated the cooperation clause in his insurance policy when he failed to heed the advice of the attorney retained to represent him. We disagreed and pointed out that suit could have been commenced against the insured by substitute service of process even if the insured never returned to West Virginia.[8] We concluded: "The well considered cases are almost unanimous in holding that a breach of the `co-operation clause', to constitute a basis of discharge of the insurer from liability, must be substantial and of such nature as to prejudice the insurer's rights." 134 W.Va. at 150, 59 S.E.2d at 436.
Marcum follows the general rule elsewhere that before an insurance policy will be voided because of the insured's failure to cooperate, such failure must be substantial and of such nature as to prejudice the insurer's rights.[9] In addition to prejudice, *911 the insurer must show that its insured willfully and intentionally violated the cooperation clause of the insurance policy before it can deny coverage.[10] Moreover, the insurer must also exercise reasonable diligence in obtaining the insured's cooperation, including attendance at trial, before the policy will be voided.[11] Finally, the insurer has the burden of proof on its claim that the insured failed to cooperate.[12]See generally 8 J. Appleman & J. Appleman, Insurance Law & Practice  4771-4776 (3d ed. 1980); 44 Am.Jur.2d Insurance  1430-1440 (1982); Annot., 9 A.L.R.4th 218 (1981).
Automobile liability insurance is chiefly designed for the benefit of third parties injured by a negligent driver. From a practical standpoint, allowing an insurance company to easily deny coverage to an insured because of insubstantial failures to cooperate would unduly expose innocent injured members of the public to financial ruin and provide an unjustifiable windfall to the prejudiced insurer. Thus, in the words of the Washington Supreme Court in Oregon Automobile Insurance Co. v. Salzberg, 85 Wash.2d 372, 376-77, 535 P.2d 816, 819 (1975), the goal of liability insurance is to extend "the maximum protection possible consonant with fairness to the insurer." (Citation omitted). See also Darcy v. Hartford Ins. Co., 407 Mass. 481, 554 N.E.2d 28 (1990).

III.
With these rules in mind, we review the facts of this case. First, there is insufficient evidence that Mr. Thomas intentionally failed to cooperate with Aetna. The insurance carrier had several contacts with Mr. Thomas, who, while canceling several appointments, did appear in the defense attorney's office in June of 1982. During *912 that interview, Mr. Thomas advised the attorney that he was working in Pittsburgh, Pennsylvania, and was frequently on the road, but gave his mother's address in Oak Hill, West Virginia, as a place to contact him. Moreover, both the defense attorney and the claims adjuster for Aetna testified that Mr. Thomas contacted them on several occasions and expressed a desire to assist Aetna in his defense.
Nonetheless, Aetna claims that it had a right to deny coverage because of Mr. Thomas's alleged failure to appear at his scheduled deposition on August 17, 1982. While the insurer asserts that it notified Mr. Thomas of the deposition by mail, there is no evidence in the record substantiating this allegation. The record does not contain a copy of the letter sent to Mr. Thomas or any written formal notice to counsel verifying the scheduled deposition.
Likewise, the insurer's proof falls woefully short of demonstrating that it exercised due diligence in maintaining contact with the insured. Aetna argues that it did diligently attempt to secure Mr. Thomas's cooperation as demonstrated by the fact that it sent him the August 23, 1982, and December 21, 1982 letters pointing out that he had failed to appear for his deposition, which violated his duty to cooperate. In neither letter did the claims adjuster clearly and unequivocally state that Mr. Thomas's continued failure to cooperate would result in the loss of insurance coverage for the automobile accident.
After the December, 1982 letter, plaintiff's counsel took the deposition of Mr. Thomas's mother, who was able to give a permanent address where Mr. Thomas could be reached. She explained that in August of 1982, Mr. Thomas left Pittsburgh and found work in California. In his affidavit, Aetna's insurance adjuster admitted that he had been in contact with Mr. Thomas after he moved to California, and on May 23, 1983, Mr. Thomas had telephoned him inquiring about the lawsuit. During this conversation, the adjuster advised Mr. Thomas that Aetna was denying him coverage based on his failure to cooperate.
On this same day, Mr. Schrader wrote plaintiffs' attorney explaining that Aetna was denying coverage to Mr. Thomas because of his failure to cooperate. The adjuster's affidavit further states that on August 8, 1983, he sent a certified letter denying coverage to Mr. Thomas's last known address and that the letter was accepted on his behalf. Neither this letter nor the return receipt was introduced into the record. Finally, the insurer apparently never attempted to make personal contact with the insured through its California offices.
Other jurisdictions confronted with much more egregious facts have had little difficulty in rejecting denial of coverage claims by insurers under cooperation clauses because the insurer did not exercise reasonable diligence in attempting to contact the insured. For example, in American Guarantee & Liability Insurance Co. v. Chandler Manufacturing Co., 467 N.W.2d 226 (Iowa 1991), the defendant, Chandler Manufacturing Company, was sued for allegedly manufacturing a defective battery charger. While the attorneys retained by the insurance company to represent the defendant were able to secure some contact with George Chandler, the company's president, he failed to answer numerous letters sent to him by the defense lawyers. The president did provide the defense lawyers with oral answers to interrogatories, but when the answers were typed and sent to him for his signature, the president failed to return them. Two weeks before trial, the defense lawyers sent the president a hand-delivered letter notifying him of the trial date and urging him to cooperate. He did not respond to the letter and did not appear at trial.
After an adverse judgment was rendered against the defendant, the insurer refused to pay the judgment alleging that Chandler Manufacturing breached the cooperation clause of the policy. The trial court rejected this contention. The Iowa Supreme Court affirmed because the insurer failed to exercise reasonable diligence in obtaining the president's cooperation:
"American's claims office in Kansas City merely corresponded with George Chandler *913 concerning the lawsuit. American suggested that George cooperate with its lawyer in Ft. Dodge, Iowa, even though it knew that George was a resident of Evanston, Illinois. It did not utilize its claims office and personnel in an area near Evanston to personally contact George. After a careful review of American's correspondence and its actions and inferences therefrom, we find that American was more concerned with making a paper trail to document George's noncooperation than in securing his cooperation in defending the lawsuit. Although George Chandler was accessible, American never took his personal statement, his deposition, or attempted to secure his presence at trial." 467 N.W.2d at 230.
The Massachusetts Supreme Judicial Court in DiMarzo v. American Mutual Insurance Co., 389 Mass. 85, 449 N.E.2d 1189 (1983), dealt with even more severe facts. There, the defense attorney sent several letters to the insured. The first letter, sent by certified mail, requested the insured to appear for a deposition. The return receipt was signed by someone other than the insured, and the insured did not appear at the deposition. Two weeks later, a second letter was sent to the insured and was returned unclaimed. A third letter, advising the insured of the trial date, was also returned unclaimed. The court, in rejecting the insurance company's contention that it no longer had a duty to defend because the insured had failed to cooperate, stated:
"Our decisions place the insurer under a duty to take affirmative steps to secure the cooperation of a vanished policyholder. Allen v. Atlantic Nat'l Ins. Co., [350 Mass. 181, 214 N.E.2d 28 (1966)]. See Imperiali v. Pica, 338 Mass. 494, 498-499, 156 N.E.2d 44 (1959). American Mutual's efforts primarily consisted of repeated attempts to locate MacDonald at an address where he obviously no longer resided.16 These efforts were not sufficient to discharge its duty. Contrast Airway Underwriters v. Perry, 362 Mass. 164, 284 N.E.2d 604 (1972).
16 After MacDonald did not appear at his deposition in 1972, American Mutual hired an investigator who located MacDonald at the Plymouth house of correction. It therefore had affirmative knowledge that MacDonald did not reside at the Warren Avenue address. It appears that he did not receive notice of the deposition because of his incarceration.
"Having successfully located MacDonald once through the use of an investigator, American Mutual might have been expected to hire an investigator again if it felt it needed Mac-Donald. DiMarzo's success in locating Mac-Donald by hiring an investigator suggests that MacDonald could have been located by American Mutual as Well." 389 Mass. at 100, 449 N.E.2d at 1199.
The Court of Appeals of New York in Thrasher v. United States Liability Insurance Co., 19 N.Y.2d 159, 168-69, 278 N.Y.S.2d 793, 801, 225 N.E.2d 503, 508-09 (1967), also found that the insurer had failed to make reasonable efforts to locate the insured:
"Furthermore, once the investigator learned that Kelley no longer resided at the Teller Avenue address, his efforts to learn of his whereabouts were feeble indeed. He called Kelley's employer on the phone, but he did not visit him or attempt to talk to any of Kelley's fellow employees. The investigator solicited Morgan's and his attorney's aid in locating Kelley, but they were under no obligation to assist him. The Motor Vehicle Department was visited, but no written request for Kelley's address was ever submitted. Neighborhood bars were checked, but no checks were made at neighborhood stores or cleaning establishments, etc. No check was made at the Board of Elections and no credit reports were sought from the available credit agencies. Letters were sent to Kelley one day before the trial commenced, and attempts were made to serve a subpoena once the trial began. It is significant, however, that, after the subpoenas were returned indicating that Kelley's correct address had finally been ascertained, no further attempts were made to locate Kelley.
"Finally, we find that the evidence does not support the conclusion that Kelley willfully obstructed the defendant's efforts to defend the action. Kelley cannot be accused of willful obstruction unless he knew that the defendant wanted him to testify at the trial. The evidence *914 presented by the insurance company to support their contention that Kelley knew the investigator was looking for him is equivocal, at best, and does not discharge the defendant's burden of proving that Kelley's attitude was one of `willful and avowed obstruction'."
In this case, the original personal injury suit was filed in April of 1982, and, thirteen months later, the insurer denied coverage. During this time, Aetna's efforts to contact Mr. Thomas were minimal at best. Accordingly, we find that there is insufficient evidence that Aetna exercised due diligence in securing Mr. Thomas's cooperation.
Finally, the insurer has presented no evidence that it was substantially prejudiced by Mr. Thomas's alleged uncooperation. In all the foregoing cases, the insurer had a judgment rendered against its insured and was asserting that the insured's failure to cooperate had prejudiced the company's ability to defend the lawsuit. Here, there has been no judgment rendered in the personal injury action against David Thomas, and, therefore, it is difficult to discern how the insurer has been substantially prejudiced. On the record before us, it is clear that the insurer failed to establish any right to declare the policy void because of the insured's failure to cooperate.[13]

IV.
We have in the past held that where the evidence preponderates against the judgment entered by a trial court sitting without a jury, we will direct that a correct judgment be entered below. This rule is set out in Syllabus Point 5 of Estate of Bayliss v. Lee, 173 W.Va. 299, 315 S.E.2d 406 (1984):
"`When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment; and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the evidence as the trial court should have made and rendered.' Syllabus Point 9, Bluefield Supply Co. v. Frankel's Appliances, Inc., 149 W.Va. 622, 142 S.E.2d 898 (1965)."

V.
For the foregoing reasons, we reverse the final order of the Circuit Court of Fayette County. Moreover, because the insurer failed to prove the necessary elements to entitle it to void its insurance policy, the circuit court is directed to enter an order granting judgment in favor of the plaintiff and finding that the involved automobile insurance policy is not void.[14]
Reversed and remanded with directions.
NOTES
[1] The policy states:

"We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
"A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, at our expense and as often as we reasonably require, to physical examinations by physicians we select.
4. Authorize us to obtain medical reports and other pertinent records.
5. Submit a proof of loss when required by us." (Emphasis added).
There is no language in the policy that explicitly advises the insured that the failure to cooperate will result in the insurer's right to deny coverage.
[2] The text of the August 23, 1982, letter states: "It has been called to our attention that you failed to appear in Fayetteville, West Virginia on August 17, 1982 for the taking of your discovery deposition on the above captioned law suit.

"We refer you to the condition under your Personal Auto Policy 29 SX 13777772 PCA, Page 6 Part E `Duties after an accident or loss':
"A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.' "If we do not receive your cooperation, then we will conduct any investigation or activity in connection with the case under a full reservation of the Company's rights. Such investigation or activity does not prejudiced [sic] our right to disclaim coverage at a later date."
[3] The text of the December 21, 1982 letter is:

"We call the following to your attention.
"1. You failed to appear in Fayetteville, WV on August 19, 1982 for the taking of your discovery deposition on the above captioned lawsuit.
"We refer you to the conditions under your Personal Auto Policy 29 SX 13777772 PCA, Page 6, Part E `Duties after an accident or loss':
"`A person seeking any coverage must:
"1. Cooperate with us in the investigation, settlement or defense of any claim or suit.'
"2. According to the State Police investigation, William E. Bowyer was driving your car at the time of this accident and you inform us that he did not have your permission to do so. We point out on page 2 of your Personal Auto Policy under Exclusion `We do not provide Liability Coverage:
No. 11 for any person using a vehicle without a reasonable belief that the person is entitled to do so.'
"If we do not receive your cooperation and should it be found that William Bowyer was operating your automobile without your permission, we will still conduct any investigation or activity in connection with the case under a full reservation of the Company's rights. Such investigation or activity does not prejudiced [sic] our right to disclaim coverage at a later date."
[4] Paragraph 4 of Mr. Schrader's affidavit gives this information:

"That repeated efforts had to be made on the part of the affiant to initially obtain a statement from David Thomas, and that the insured/defendant, Thomas, moved to California soon after the lawsuit was filed against him. On August 17, 1982, which was before the insured/defendant, Thomas, moved from the jurisdiction of the lawsuit, his deposition was scheduled, and Thomas was notified by phone and by mail of the time of the taking of his deposition, yet he failed to make an appearance at this deposition. The affiant thereafter made repeated efforts to contact Thomas at various new addresses in California, in an attempt to try and reschedule his deposition in California, and to generally obtain his further assistance in defending this action. The affiant also wrote to and spoke orally with Thomas' mother, stressing the importance of Thomas cooperating with Aetna. Although on several occasions the affiant received phone calls from Thomas, Thomas would never give the affiant a phone number or a permanent address where he could be reached, and would instead say only that he would call back in the future with this information. However, this information was never forthcoming."
[5] In Paragraph 5 of Mr. Schrader's affidavit, he states:

"That on May 23, 1983, the insured/defendant, Thomas, called the affiant to inquire about the lawsuit, and stated once again that he did not have a phone number or permanent address at that time, and once again said that he would call back with this information in the near future. Thomas also refused to give out the name of the company he was working for at that time. During this phone call, the affiant told Thomas that Aetna was denying coverage to him based on his failure to cooperate."
[6] We approved of this procedure in Syllabus Point 3 of Christian v. Sizemore, 181 W.Va. 628, 383 S.E.2d 810 (1989), where we held: "An injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage."
[7] The underlying personal injury action is still pending in the Circuit Court of Fayette County.
[8] See W.Va.Code, 56-3-31 (1990), which is similar to the statute we referred to in Marcum. See 1937 W.Va. Acts ch. 47.
[9] The Supreme Judicial Court of Massachusetts in Darcy v. Hartford Insurance Co., 407 Mass. 481, 489, 554 N.E.2d 28, 33 (1990), stated: "[A]ctual prejudice to an insurer's interests due to lack of an insured's cooperation must be demonstrated before a denial of coverage will be permitted[.]" (Footnote omitted). See, e.g., The Home Indem. Co. v. Reed Equip. Co., 381 So.2d 45 (Ala. 1980); Arizona Property & Casualty Ins. Guar. Fund v. Helme, 153 Ariz. 129, 735 P.2d 451 (1987); United Servs. Auto. Ass'n v. Martin, 120 Cal.App.3d 963, 174 Cal.Rptr. 835 (1981); Hansen v. Barmore, 779 P.2d 1360 (Colo.App.1989); Brown v. Employer's Reinsurance Corp., 206 Conn. 668, 539 A.2d 138 (1988); Farley v. Farmers Ins. Exch., 91 Idaho 37, 415 P.2d 680 (1966); State Farm Mut. Auto. Ins. Co. v. McSpadden, 88 Ill.App.3d 1135, 44 Ill.Dec. 215, 411 N.E.2d 121 (1980); Miller v. Dilts, 463 N.E.2d 257 (Ind.1984); Boone v. Lowry, 8 Kan.App.2d 293, 657 P.2d 64 (1983); Medical Mut. Liab. Ins. Soc'y v. Miller, 52 Md.App. 602, 451 A.2d 930 (1982); Anderson v. Kemper Ins. Co., 128 Mich.App. 249, 340 N.W.2d 87 (1983); Rieschl v. Travelers Ins. Co., 313 N.W.2d 615 (Minn.1981); Riffe v. Peeler, 684 S.W.2d 539 (Mo.App.1984); Solvents Recovery Serv. v. Midland Ins. Co., 218 N.J.Super. 49, 526 A.2d 1112 (1987); Foundation Reserve Ins. Co. v. Esquibel, 94 N.M. 132, 607 P.2d 1150 (1980); Gabor v. State Farm Mut. Auto. Ins. Co., 66 Ohio App.3d 141, 583 N.E.2d 1041 (1990); Bailey v. Universal Underwriters Ins. Co., 258 Or. 201, 474 P.2d 746 (1970); Pickwick Park Ltd. v. Terra Nova Ins. Co., 602 A.2d 515 (R.I.1992); Evans v. American Home Assurance Co., 252 S.C. 417, 166 S.E.2d 811 (1969); State Farm Mut. Auto. Ins. Co. v. Davies, 226 Va. 310, 310 S.E.2d 167 (1983); American Fidelity Co. v. Kerr, 138 Vt. 359, 416 A.2d 163 (1980); Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash.App. 352, 711 P.2d 1066 (1985); Dietz v. Hardware Dealers Mut. Fire Ins. Co., 88 Wis.2d 496, 276 N.W.2d 808 (1979).
[10] See, e.g., Smithers v. Mettert, 513 N.E.2d 660 (Ind.App.1987); Watson v. Jones, 227 Kan. 862, 610 P.2d 619 (1980); Thrasher v. United States Liab. Ins. Co., 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967); Donaldson v. Farm Bureau Mut. Auto. Ins. Co., 339 Pa. 106, 14 A.2d 117 (1940); Stumpf v. Continental Casualty Co., 102 Or.App. 302, 794 P.2d 1228 (1990); State Farm Mut. Auto. Ins. Co. v. Davies, supra.
[11] See, e.g., Rustia v. Prudential Property & Casualty Ins. Co., 440 So.2d 1316 (Fla.App.1983), review denied, 450 So.2d 488 (1984); Lappo v. Thompson, 87 Ill.App.3d 253, 42 Ill.Dec. 531, 409 N.E.2d 26 (1980); Smithers v. Mettert, supra; American Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co., 467 N.W.2d 226 (Iowa 1991); DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 449 N.E.2d 1189 (1983); Rieschl v. Travelers Ins. Co., supra; Riffe v. Peeler, supra; Thrasher v. United States Liab. Ins. Co., supra; Bailey v. Universal Underwriters Ins. Co., supra.
[12] See, e.g., United Servs. Auto. Ass'n v. Martin, supra; Boone v. Lowry, supra; Farley v. Farmer's Ins. Exch., supra; Smithers v. Mettert, supra; Johnson v. Wade, 47 Ill.App.3d 610, 7 Ill.Dec. 726, 365 N.E.2d 11 (1977); American Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co., supra; Darcy v. Hartford Ins. Co., supra; Anderson v. Kemper Ins. Co., supra; Pawtucket Mut. Ins. Co. v. Soles, 184 A.D.2d 498, 584 N.Y.S.2d 192 (1992); Lockwood v. Porter, 98 N.C.App. 410, 390 S.E.2d 742 (1990); Pickwick Park Ltd. v. Terra Nova Ins. Co., supra; Bailey v. Universal Underwriters Ins. Co., supra; North River Ins. Co. v. Gourdine, 205 Va. 57, 135 S.E.2d 120 (1964).
[13] The declaratory judgment action has delayed resolution of the personal injury suit. This delay is basically a result of the insurer's intransigence in declaring the policy to be void. This delay and its consequences cannot be charged to the insured.
[14] A further assignment of error made by the plaintiffs is the circuit court's refusal to grant its discovery motion for production of the insurer's file in the underlying personal injury action. The chief argument for permitting such discovery was to obtain written documentation on what efforts the insurer and its agents had made to locate Mr. Thomas. This matter was not pressed below to the point where the circuit court was required to rule. We seen no reason why such a request would not be relevant where the insurer asserts there is no coverage because of the insured's failure to cooperate. See gener ally 20B J. Appleman & J. Appleman, Insurance Law & Practice  12081 (3d ed. 1980).